**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Leo Phillip THOMAS, Defendant–**
**Appellant.**

No. 02–5078.

United States Court of Appeals,
Sixth Circuit.

May 21, 2004.

Charles P. Wisdom, Jr., Asst. U.S. Attorney, John Patrick Grant, Asst. U.S. Attorney, Lexington, KY, Stephen C. Smith, Asst. U.S. Attorney, London, KY, for Plaintiff–Appellee.

Leo Phillip Thomas, Miami, FL, pro se.

John P. Chappell, London, KY, for Defendant–Appellant.

Before: BOGGS, Chief Judge; and BATCHELDER and SUTTON, Circuit Judges.

PER CURIAM.

State vehicle inspectors found approximately 47 pounds of marijuana, wrapped in Christmas paper, in the trailer of Leo Phillip Thomas's cargo truck. In the truck's cab, where Mr. Thomas and a passenger had been riding, the inspectors found a loaded pistol and ammunition. A jury convicted Thomas of conspiracy to possess marijuana with intent to distribute, 21 U.S.C. § 846; possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1); and carrying a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1). He appeals from this judgment on several grounds. Only one involves a plausible claim of legal error, and that error, if it was such, was clearly harmless. We therefore affirm.

**I**

On November 20, 2000, Thomas stopped his tractor-trailer rig at a highway weigh station in Laurel County, Kentucky. Inspectors from Kentucky Motor Vehicle Enforcement carried out a random safety inspection of Thomas's truck. They soon recognized that Thomas was carrying an unauthorized passenger, Anthony Julien, in the truck's cab, in violation of applicable regulations. When questioned about their relationship and the nature of their trip, Thomas and Julien gave conflicting answers, and proved unable to explain the discrepancies. Thomas and Julien also failed to answer when asked whether they knew what the truck was carrying, though they denied carrying illegal guns or drugs.

Their suspicions aroused, the investigators asked Thomas and Julien for permission to search the truck. The two men consented to a search. The truck's trailer proved to contain several cargo pallets of tuna, as well as a pair of large duffel bags. Inside these bags were three packages wrapped in Christmas paper; when unwrapped, the packages were found to contain slightly more than 47 pounds of marijuana.

The inspectors also searched the truck's cab. In a compartment above the driver's seat, they found a loaded Beretta 9-mm automatic pistol and a loaded spare magazine. The pistol had a 16-round capacity, with room for an additional round in the chamber. The compartment was within an arm's length of the driver's seat. The cab also contained a receipt and a license for the gun, and two pagers.

The inspectors then placed Thomas and Julien under arrest. Thomas later admitted to the inspectors that he and Julien had planned for two weeks to make a trip to deliver the marijuana from Dallas to New Jersey, and that he expected to receive $2,500 for delivering it. Thomas also admitted that the pistol was his, and stated that he kept its registration papers in the truck.

Thomas was indicted and tried on three counts: conspiracy to possess marijuana with intent to distribute; possession of marijuana with intent to distribute; and carrying a firearm in relation to drug trafficking. The government bolstered its case by presenting the expert testimony of an experienced DEA agent, Jack Sparks, who testified that several pieces of evidence found in Thomas's vehicle were consistent with the practices of drug traffickers. Agent Sparks expressed the not implausible opinion that the 47 pounds of marijuana seized from the truck was an amount consistent with commercial distribution, and inconsistent with mere personal use. He estimated its street value as $100,000. Sparks also testified that Thomas's Beretta pistol was a high-capacity weapon of a kind characteristically used by drug traffickers to protect their shipments. He added that, as a law enforce-

ment officer, he found the Beretta "intimidating." Sparks further stated that drug traffickers typically used pagers and cellular phones to communicate, in the belief that this made their communications harder to intercept. He testified that drug trafficking organizations often use commercial vehicles like Mr. Thomas's truck to ship drugs. Finally, Sparks testified that Texas, the state where Thomas's trip had originated, was a common source state for marijuana, and that the New York area was a common destination for drug shipments.

Thomas's counsel moved *in limine* before trial to exclude all of Agent Sparks's testimony under Federal Rule of Evidence 702. The district court denied the motion. It later gave a standard cautionary instruction, telling the jurors that they were not bound to accept Sparks's expert testimony, and that they were to scrutinize the grounds on which his opinion rested.

Thomas took the stand at trial. He testified that Julien was an acquaintance with whom Thomas occasionally spoke on the phone, and that he had agreed to give Julien a ride to the New York area to look for a job. Julien, he said, had asked to bring two large duffel bags with him, and Thomas agreed to let him store the bags in the truck's trailer. Thomas denied knowing that the packages inside the bags contained marijuana until they were opened by the inspectors at the weigh station. He acknowledged that he had expected to receive approximately $2,500 for delivering his cargo, but stated that he had been referring to the tuna, not the marijuana, when he told the inspectors this. Concerning the 9–mm pistol, Thomas testified that he had simply purchased the weapon for personal protection after being robbed on a prior occasion.

At the close of evidence, Thomas moved for an acquittal on the count of possessing a firearm in relation to drug trafficking, on the ground that the evidence was insufficient to support a conviction. The district court denied the motion. Thomas also requested that the jury be given an instruction on the offense of misprision of a felony, which Thomas contended was a lesser included offense of the charges against him. The court denied this motion as well. The jury convicted Thomas of all counts. (His co-defendant, Julien, later pleaded guilty to one count of conspiracy.) The district court imposed an aggregate sentence of 93 months of imprisonment for these crimes. This sentence included a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1, which the district court imposed after finding that Thomas had committed perjury at trial by testifying (1) that the $2,500 payment that he had mentioned to the inspectors referred to a payment for delivering tuna, not marijuana; and (2) that he did not know that the packages in his truck contained marijuana.

Thomas now brings this timely appeal, which raises four issues.

## II

### A

■ Thomas first argues that the district court should have excluded Agent Sparks's testimony on drug trafficking practices as unreliable and irrelevant under Rule 702. Our review is for abuse of discretion. *United States v. Bender,* 265 F.3d 464, 472 (6th Cir.2001). Properly qualified expert testimony is generally admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Our court regularly allows qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate cautionary instructions are

given, since knowledge of such activity is generally beyond the understanding of the average layman. *Bender, ibid.; United States v. Thomas,* 74 F.3d 676, 680–83 (6th Cir.1996) (admitting expert testimony on drug dealers' record-keeping practices and use of pagers); *see United States v. Valle,* 72 F.3d 210, 214–15 (1st Cir.1995) (admitting expert testimony that the amount of drugs seized suggested distribution, not personal use). The district court gave a proper cautionary instruction in this case. Its decisions to admit Agent Sparks's testimony regarding the commercial nature of the quantity of marijuana seized, the role of pagers in drug trafficking practices, and the source states and methods of transportation used for drug shipments, were all clearly proper, and need not be discussed individually.

■ We also uphold the district court's admission of Sparks's opinion testimony that large-capacity pistols like Thomas's Beretta are commonly used in drug trafficking. Most courts have taken a very tolerant view of the admissibility of expert testimony linking the presence of firearms to drug trafficking activities, *e.g., United States v. Allen,* 269 F.3d 842, 845–46 (7th Cir.2001) (upholding admission of police expert testimony "that it is common for drug dealers to keep weapons to protect themselves and their drugs," *simpliciter,* reasoning that the "average juror is unlikely to be knowledgeable" that guns are among "tools of the trade"); *United States v. Jackson,* 67 F.3d 1359, 1366 (8th Cir. 1995) (same). We must acknowledge some doubt about the helpfulness of such testimony when it merely asserts a generalized link between the presence of firearms, without more, and drug trafficking crimes. The Second Circuit expressed a similar concern in *United States v. Perrone,* 936 F.2d 1403 (2d Cir.1991). In that case, "expert testimony was permitted [at trial] ... that guns are commonly used in the drug trade," a matter that the Second Circuit thought was "seemingly within the grasp of any citizen." *Id.* at 1411. The court worried that the officer's testimony "may have achieved undue prominence in the minds of jurors because it was uttered by a so-called 'expert.'" *Ibid.* It went on to affirm Perrone's conviction because any error was harmless. *Ibid.*

Nevertheless, while our own holdings to date have not embraced the sort of blanket testimony upheld in cases like *Allen* and *Jackson,* they have gone far enough to establish that the district court here acted within its discretion in admitting Sparks's (somewhat more specific) testimony about drug traffickers' characteristic use of high-capacity pistols. In *United States v. Pearce,* 912 F.2d 159 (6th Cir.1990), we held that there was no abuse of discretion in admitting an officer's expert testimony that a variety of 9–mm and .38–caliber handguns seized inside a suspicious building was typical of the fortifications found in crack houses. *Id.* at 163. We must conclude that Agent Sparks's testimony about high-capacity weapons in this case was as relevant and non-obvious as the testimony about firearms admitted in *Pearce.*[1] Accordingly, by the logic of that

---

1. Police expert testimony in other federal courts as to which firearms are characteristic of drug traffickers has encompassed quite a diversity of weapons. *See, e.g., United States v. Hopkins,* 310 F.3d 145, 151 (4th Cir.2002) (upholding admission of expert testimony that the discovery of a "small-caliber weapon"—a .38–caliber pistol—in defendant's car suggest-ed that he was a drug dealer); *United States v. Catlett,* 97 F.3d 565 (D.C.Cir.1996) (affirming drug trafficking conviction based in part on police testimony that .357 Magnum was commonly used by drug traffickers); *United States v. VonWillie,* 59 F.3d 922, 929 (9th Cir.1995) (upholding admission of police testimony that "MK–11" gun was often used by drug traffick-

case, his testimony could have assisted the jury here in deciding whether Thomas had carried the pistol in relation to drug trafficking, and, indirectly, whether Thomas had conspired with Julien, as part of a larger commercial drug operation, to possess the marijuana in Thomas's truck. Thomas's counsel was free to counter the effect of Sparks's testimony with cross-examination, and he did so, eliciting from Sparks the concessions that the Beretta was a common model and that its 9–mm format was a common caliber, neither particularly large nor small.

We are less sure of the propriety of Sparks's testimony that, as a law enforcement officer, he found Thomas's Beretta pistol to be intimidating. It is true that courts have upheld police expert testimony that a given weapon was, as a general matter, viewed as "intimidating." *See VonWillie,* 59 F.3d at 929 (concerning an "MK–11" weapon, a description which appears to have referred to either a submachine gun or a military sniper rifle). Such testimony can, under appropriate circumstances, be probative of a defendant's intent to protect and bolster his drug-related activities by carrying a particular weapon. Here, however, it is unclear whether Agent Sparks's testimony meant to convey a general observation of this nature, or instead conveyed only his subjective reaction to Thomas's weapon. If the latter, it would bear only a very attenuated relationship to the material issues in the case. We have cautioned that putative expert testimony that dwells on unrelated topics and does not "tend to prove [the] charge" against a defendant can "serve to prejudice the jury." *United States v. Green,* 548 F.2d 1261, 1270 (6th Cir.1977). For this reason, trial courts should exercise

care in drug cases to screen "background" expert testimony that may tend to incite or confuse the jurors. *Ibid.*

However, even if this portion of Agent Sparks's testimony was improper (which we need not decide), any error was harmless. It was limited to a single remark, and the record before us does not indicate that the government harped on or exploited the statement. Moreover, the evidence against Thomas was very strong. His confession to the inspectors was strongly probative of his guilt of the drug possession and conspiracy charges against him. It also established that the Beretta pistol belonged to Thomas, and that he took it with him, stashed near the driver's seat in his truck's cab, on a drug delivery that Thomas and Julien had planned for two weeks. The presence of the receipt for the gun suggested that it had been purchased recently, contemporaneous with transporting the drugs. In addition, Agent Sparks gave admissible testimony (though it was meaningfully challenged on cross-examination) that the high-capacity weapon was itself probative of involvement in drug trafficking. All this is not only decisive evidence that Thomas "carrie[d]" the gun within the meaning of 18 U.S.C. § 924(c)(1), *see Muscarello v. United States,* 524 U.S. 125, 126–27, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998); *United States v. Walls,* 293 F.3d 959, 965 (6th Cir.2002), it is also formidable evidence that he carried the gun "during and in relation to" his drug crimes. A conviction for carrying a firearm "in relation to" drug offenses requires the government to prove that the "firearm ... ha[s] some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Id.* at 968 (quotation marks

ers); *United States v. Johnson,* 46 F.3d 1166, 1168–69 (D.C.Cir.1995) (affirming drug trafficking and firearms convictions in case in-

volving police testimony that Glock .45–caliber pistol was characteristic of drug dealers).

omitted). The weapon must either "facilitat[e] or ha[ve] the potential of facilitating the drug trafficking offense." *United States v. Warwick*, 167 F.3d 965, 971 (6th Cir.1999). The circumstances here, as presented to the jury, strongly suggested that Thomas's weapon was not present by accident during Thomas's trip, and that it had the "potential of facilitating [his] drug trafficking offense" in case he encountered any resistance. In light of this evidence, and the minor impact of Agent Sparks's remark, we can say "with fair assurance, after pondering all that happened without stripping the [possibly] erroneous action from the whole, that the judgment was not substantially swayed by the error...." *United States v. Haywood*, 280 F.3d 715, 724 (6th Cir.2002) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

### B

■ Thomas makes the related argument that the district court erred in denying his motion for acquittal on the charge of carrying a firearm during and in relation to a drug trafficking crime. A motion for acquittal should be rejected if there is "sufficient evidence for a rational trier of fact to have found each element of the offense beyond a reasonable doubt." *United States v. Lake*, 985 F.2d 265, 267 (6th Cir.1993) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). For the reasons just discussed in our harmless-error analysis of Agent Sparks's possibly improper remark about "intimidation," we have no difficulty holding that the evidence was sufficient to sustain Thomas's conviction under 18 U.S.C. § 924(c)(1). *See Walls*, 293 F.3d at 969 (upholding § 924(c)(1) conviction where defendant had drug manufacturing equipment in his car trunk and "had the loaded handgun next to him in the car" during flight from police).

### C

■ Thomas also argues that the district court erred by refusing to give an instruction on misprision of a felony, 18 U.S.C. § 4. This argument is meritless.

A defendant is not entitled to a lesser offense instruction ... unless he can meet both prongs of a twopart test: (1) the elements of the lesser offense are a subset of the elements of the charged offense; and (2) the evidence would allow a rational jury to find the defendant guilty of the lesser offense but not guilty of the charged offense.

*United States v. Colon*, 268 F.3d 367, 373 (6th Cir.2001). Here, Thomas cannot satisfy the first part of the test, because the elements of misprision of a felony are not a subset of any of the offenses with which Thomas was charged. "The elements of misprision of felony under 18 U.S.C. § 4 are (1) the principal committed and completed the felony alleged; (2) the defendant had full knowledge of that fact; (3) the defendant failed to notify authorities; and (4) the defendant took steps to conceal the crime." *United States v. Gebbie*, 294 F.3d 540, 544 (3d Cir.2002). None of the offenses charged against Thomas required proof of failure to notify authorities, or of concealment of earlier acts. *See* 18 U.S.C. § 924(c)(1); 21 U.S.C. §§ 841(a)(1), 846. Thus, misprision of a felony is not a lesser included offense of these crimes, and Thomas was not entitled to a misprision instruction.

### D

■ Finally, Thomas contends that it was error for the district court to enhance his sentence for obstruction of justice. This argument must also fail. We review *de novo* the district court's determination that Thomas's conduct amounted to ob-

struction of justice, while reviewing any pertinent factual findings for clear error. *United States v. Baggett,* 342 F.3d 536, 540–41 (6th Cir.2003). In order to justify an obstruction of justice enhancement based on perjury, the district court must identify the particular portions of the defendant's testimony that it deems perjurious, and then must either make a specific finding for each element of perjury or make a factual finding that encompasses all of the factual predicates for a finding of perjury. *United States v. Lawrence,* 308 F.3d 623, 632 (6th Cir.2002). The district court fully satisfied these requirements. It identified two specific instances in which, as it found, Thomas knowingly gave materially false testimony under oath.

First, Thomas stated at trial that, while he admitted to the vehicle inspectors that he expected to receive a $2,500 payment for delivering his cargo, this referred only to the tuna in his truck. The district court observed that this testimony squarely conflicted with Thomas's earlier recorded statements to the inspectors, who had specifically asked him whether the payment was for the *marijuana,* not the tuna—and Thomas had answered that question affirmatively. Moreover, the district court properly held that this testimony was material, because if the jury had believed it, it could find that Thomas did not satisfy the knowledge or intent elements of the drug conspiracy and possession charges against him.

Second, Thomas testified that he did not know the packages inside the duffel bags in his truck contained marijuana. Again, this was contrary to his earlier statement to the inspectors. The district court properly held this testimony to be material because, again, it tended to negate the *mens rea* elements of the drug trafficking charges against Thomas. The district court thus followed proper procedures in imposing the sentence enhancement, and we discern no legal error in its conclusions or clear error in its factual findings.

## III

For the foregoing reasons, the judgment is AFFIRMED.