*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0336P (6th Cir.)
File Name: 04a0336p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
 *Plaintiff-Appellee,*

 *v.*

LARRY SWAFFORD,
 *Defendant-Appellant.*

No. 03-5468

———————————

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 02-00014—Curtis L. Collier, District Judge.

Argued: June 11, 2004

Decided and Filed: September 30, 2004

Before: KEITH, CLAY, and GIBBONS, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Nikki C. Pierce, FEDERAL DEFENDER SERVICES, Greeneville, Tennessee, for Appellant. Paul W. Laymon, Jr., ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Nikki C. Pierce, FEDERAL DEFENDER SERVICES, Greeneville, Tennessee, for Appellant. Paul W. Laymon, Jr., ASSISTANT

UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

 GIBBONS, J., delivered the opinion of the court, in which KEITH, J., joined. CLAY, J. (pp. 11-12), delivered a separate concurring opinion.

———————————

## OPINION

———————————

 JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Larry Swafford was charged in a three count indictment in the United States District Court for the Eastern District of Tennessee with (1) possession with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); (2) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (3) possession of a firearm in furtherance of the drug trafficking crimes charged in the first two counts, in violation of 18 U.S.C. § 924(c). After a jury trial, Swafford was convicted on all three counts and sentenced to 180 months imprisonment. Swafford brought this appeal, arguing that the evidence was insufficient to support his conviction for possession of a firearm in furtherance of a drug trafficking offense and that the district court erred in admitting the testimony of law enforcement officers who testified (1) that the amounts of drugs possessed by Swafford were consistent with resale and that dealers often carry firearms in connection with their sales activities; and (2) that a name on a business card belonged to a known drug dealer and numbers on that card corresponded to common drug prices. For the following reasons, we affirm Swafford's conviction.

## I.

On November 15, 2001, Detective Jimmy Smith of the Bradley County Sheriff's Office acquired and executed a search warrant for Swafford's residence, a single family house in Cleveland, Tennessee. Smith, accompanied by other officers, arrived at the residence shortly after 9:10 p.m. When Swafford's wife answered the door, the officers entered and found Swafford lying in bed holding an infant. An officer found a loaded .45 caliber semi-automatic pistol within arm's reach of where he had been lying. The officer seized this pistol, as well as two loaded .22 caliber pistols. The officers did not seize several rifles and shotguns found in a gun cabinet.

An officer found ten to fifteen garbage bags in the bed of an old truck in a makeshift garage behind the house. The officers found a Tupperware bowl containing three one-ounce bags of marijuana and some loose marijuana in one of the garbage bags. Also inside the bag were numerous sandwich baggies, each of which had two corners cut out. The officers also found methamphetamine weighing a total of 66.5 grams hidden in a stereo on a workbench in the garage. A shelf on the workbench held a blender which appeared to contain methamphetamine residue, a set of digital scales, and a playing card.[1]  Officers found $934 in cash in Swafford's wallet, as well as a lawyer's business card, on the back of which was written "Tony Perry 280" and "Ron 110."

## II.

In reviewing the sufficiency of the evidence for a criminal conviction, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the elements of the

---

[1]An officer testified that playing cards are commonly used to scoop methamphetamine.

offense beyond a reasonable doubt." *United States v. Davis*, 306 F.3d 398, 408 (6th Cir. 2002).

We generally review evidentiary decisions for an abuse of discretion. *United States v. Talley*, 164 F.3d 989, 1000 (6th Cir. 1999). If, however, the appealing party did not raise an objection to the introduction of the evidence at trial, we review the judge's decision for plain error. *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996). "[B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (citations omitted).

## III.

Swafford first argues that his conviction for possession of a firearm in furtherance of a drug offense was not supported by sufficient evidence. Eighteen U.S.C. § 924(c) provides:

Any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime –

(i) be sentenced to a term of imprisonment of not less than 5 years.

18 U.S.C. § 924(c)(1)(A).**2** This statute was interpreted by this court in *United States v. Mackey*, where we stated:

> [W]e emphasize that the possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction. In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use. Other factors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found.

265 F.3d 457, 462 (6th Cir. 2001) (citations omitted). The court noted that these factors would help the court "to distinguish possession in furtherance of a crime from innocent possession of a wall- mounted antique or an unloaded hunting rifle locked in a cupboard." *Id*.

In the present case, Swafford's .45 caliber pistol was strategically located so that it was quickly and easily available for use. The gun was found loaded, with its handle pointing up, within arm's reach of the bed where Swafford was lying. It can hold a large number of rounds, and because it is semiautomatic, it can fire these rounds in rapid succession. Agent Frank Ledford of the Drug Enforcement Administration testified that such weapons play a role in drug distribution, as dealers carry them for protection and intimidation purposes. Because Swafford had been convicted of a prior felony, his possession of the gun was unlawful.

---

**2** As this court has stated, § 924(c) "criminalizes two separate and distinct offenses," using or carrying a firearm during and in relation to a drug offense, and possessing a firearm in furtherance of a drug offense. *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004). Swafford was charged with the latter.

Finally, the gun was discovered as the officers executed a search warrant looking for drugs, which they ultimately found. Thus, each of the *Mackey* factors points to the conclusion that this weapon was possessed in furtherance of the drug offenses.

In addition, we have stated that "[a]lthough possession of a firearm in the same premises as the drug trafficking activities alone is insufficient to support a conviction under section 924(c), a jury can reasonably infer that firearms which are strategically located so as 'to provide defense or deterrence in furtherance of the drug trafficking' are used in furtherance of a drug trafficking crime." *United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004). While in *Couch* the firearms were in closer proximity to the drugs than was the case here, we also relied on testimony from a law enforcement officer that "at least one of the firearms discovered – the Smith & Wesson handgun – is commonly associated with drug trafficking crimes." *Id*. The same testimony was offered here with regard to the .45. Also, while the drugs were not found in the same room as the gun, the garage where they were found was easily accessible from the bedroom where Swafford and the gun were found. Swafford could reach the garage, which was attached to the house by wooden boards, simply by walking ten to fifteen feet out the bedroom door. In addition, the gun seems much more useful for protection purposes if kept close to Swafford, the potential user, rather than close to the drugs. Considering this evidence, we conclude that a rational trier of fact could have found the elements of the crime beyond a reasonable doubt.

Swafford next argues that the district court erred by admitting Agent Ledford's testimony that the drugs were possessed with the intent to distribute and that the guns were

possessed in furtherance of the drug offenses.[3]  Swafford contends that Agent Ledford testified to an ultimate issue in the trial, thereby improperly invading the province of the jury and violating his Sixth Amendment right to a jury trial. Because Swafford did not object at trial, we review the district court's decision for plain error.

Agent Ledford testified on behalf of the government as an expert in the area of methamphetamine investigations. Properly qualified expert testimony is generally admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  "Our court regularly allows qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate cautionary instructions are given, since knowledge of such activity is generally beyond the understanding of the average layman." *United States v. Thomas*, 99 Fed. Appx. 665, 668-69 (6th Cir. 2004) (citing

---

[3] Agent Ledford testified as follows:

Q: But based upon the factors that I've just set out for you that you know to be the evidence, do you have an opinion as to whether or not this methamphetamine was possessed with the intent to distribute it?

A: Yes, sir, that's what it was designed for, that's what it was doing.

Q: Why, in your opinion, was that possessed with the intent to distribute?

A: Because you have the amount, 2½, maybe – approximately 2½ ounces, you've got the blender where it's been chopped up so it can be weighed out correctly on the scales, then you have the baggies with the corners cut out of them.

Q: What about the presence of the firearms;  does that have a role in distribution-of-drug activity?

A: Yes, sir, it does.

Q: What is that?

A: We see that drug dealers carry firearms for intimidation and protection of their product.

---

*United States v. Bender*, 265 F.3d 464, 472 (6th Cir. 2001)).[4] The recognized role of police officers as experts in cases such as this one requires that we find no error in the admission of Agent Ledford's testimony.

Police officers are routinely allowed to testify that circumstances are consistent with distribution of drugs rather than personal use. *See United States v. Jones*, 81 Fed. Appx. 45, 48 (6th Cir. 2003) (affirming defendant's sentence where police officer testified that the amount of drugs found, as well as the presence of zip-lock bags and a digital scale, suggested that defendant intended to distribute the drugs); *United States v. Dillard*, 78 Fed. Appx. 505, 514-15 (6th Cir. 2003) (affirming defendant's sentence where officer testified that amount of drugs was more consistent with distribution than with personal use); *United States v. Quinn*, 230 F.3d 862, 866 (6th Cir. 2000) (affirming defendant's sentence where officer testified that amount of drugs was more consistent with distribution than with personal use).

In addition, we find that the district court did not err in allowing Agent Ledford to testify that firearms play a role in drug trafficking activity.  We recently held admissible an officer's testimony that large-capacity pistols are commonly used in drug trafficking.  *See Thomas*, 99 Fed. Appx. at 669.

---

[4] In the instant case, the district court properly cautioned the jury:

You have . . . heard the testimony of Drug Enforcement Administration Special Agent Frank Ledford.  Special Agent Ledford was offered as an expert in the area of methamphetamine investigations. An expert witness has special knowledge or experience that allows the witness to give an opinion.

You do not have to accept an expert's opinion.  In deciding how much weight to give it, you should consider the witness's qualifications and how he reached his conclusions as well as any other factors you think are relevant to determining whether the expert is a credible witness.

In that case, we observed that "[m]ost courts have taken a very tolerant view of the admissibility of expert testimony linking the presence of firearms to drug trafficking activities." *Id*. (citing *United States v. Allen*, 269 F.3d 842, 845-46 (7th Cir. 2001) (upholding admission of police expert testimony that it is common for drug dealers to keep weapons to protect themselves and their drugs) and *United States v. Jackson*, 67 F.3d 1359, 1366 (8th Cir. 1995) (same)). In addition, in *United States v. Pearce*, we held admissible an officer's testimony that handguns found inside a suspicious building were typical of guns found in crack houses. 912 F.2d 159, 163 (6th Cir. 1990). Similarly, the district court in this case did not plainly err in allowing Agent Ledford to testify that "drug dealers carry firearms for intimidation and protection of their product."

Last, Swafford argues that the district court erred in admitting the testimony of Detective Smith who identified a name handwritten on a business card found in Swafford's wallet as that of a known drug dealer and who stated that two dollar amounts written on the card corresponded to the cost of certain quantities of methamphetamine. Swafford argues that this testimony was impermissibly based on hearsay and speculation. Swafford did not object to the admission of this testimony, contemporaneously or otherwise, although later in the trial he objected to the admission of the business card on relevancy grounds. We therefore review for plain error.

Smith's testimony regarding common drug prices helped the jury to understand the evidence presented, and therefore was proper expert testimony. *See Bender*, 265 F.3d at 472. Further, he did not state that the numbers actually represented drug debts, which would have been beyond his knowledge, just that they were consistent. Finally, Smith's testimony, elicited during cross examination, that Tony Perry, whose name was written on the card, was a known drug dealer was based on personal knowledge gleaned from past investigations. The admission of Smith's testimony was not plain error.

## IV.

For these reasons, we affirm Swafford's conviction and sentence.

———————————

**CONCURRENCE**

———————————

CLAY, Circuit Judge, concurring. I concur with the majority's disposition but not with all of its reasoning on the issue of whether Defendant possessed a firearm "in furtherance of" a drug trafficking crime, under 18 U.S.C. § 924(c)(1)(A). This issue is closer than the majority suggests.

The majority states that "each of the *Mackey* factors points to the conclusion that this weapon was possessed in furtherance of the drug offenses." This is not entirely true. For one, "the time and circumstances under which the firearm was found," *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001), provide little evidence of any connection between the firearm and drug trafficking. The firearm was not discovered during any drug transaction but, rather, during a police search of the residence. Another factor in *Mackey* was the proximity of the firearm to the drugs. *Id.* at 462. In the instant case, the facts are either ambiguous or favor Defendant's position, inasmuch as the firearm was found in the bedroom and the drugs were in the garage.

There were *Mackey* factors supporting the connection between the firearm and the drug offense, such as the gun being loaded, illegally possessed, and in a very easily accessible location. Based upon these factors it would not be irrational for a factfinder to sustain a conviction under § 924(c)(1)(A). But this is a close issue, and any small variation in the facts, diminishing the connection between the gun and the drugs, might have been enough to render the evidence insufficient to support the conviction. Under very similar facts, in *United States v. Hall*, 20 F.3d 1084 (10th Cir. 1994), the Tenth Circuit ruled that there was insufficient evidence to support a conviction under § 924(c), where a police search of a house found drugs in a package on top of a refrigerator in the kitchen and a loaded firearm on the top shelf of a closet in an upstairs bedroom. Significantly, in *Hall* the charges were under the "during and in relation to" clause of § 924(c)(1)(A), which demands less evidence of a connection to the drug trafficking offense than is required by the "in furtherance of" clause that was charged in the instant case. *Mackey*, 265 F.3d at 462.

The majority presents this issue as straightforward, but it is not. There is sufficient evidence to support a conviction, but only by a close margin.