**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0717n.06

No. 08-2514

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Nov 17, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Manuel I. Brooks, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:  MERRITT, ROGERS, and KETHLEDGE, Circuit Judges.

**ROGERS, Circuit Judge.**  Defendant Manuel Brooks challenges the sufficiency of the evidence to support his conviction on counts of conspiracy to possess with intent to distribute between five and fifty grams of cocaine base, and possessing a firearm in furtherance of a drug-trafficking crime.  Brooks makes the counterintuitive argument that because the evidence assertedly shows only a conspiracy to possess *more than* fifty grams, there is not sufficient evidence to support the jury's verdict that Brooks conspired to possess between five and fifty grams.  Because there is evidence of amounts under fifty grams that the jury could have accepted, the premise for Brooks' argument fails, even assuming the argument otherwise holds water.  Because Brooks' other arguments likewise lack merit, his convictions must be upheld.

## I.

ATF agents executed a valid search warrant on Brooks' residence in Detroit on March 2, 2007. Brooks' nephew, Darryl Madison, also lived there, along with Javon Woodard (Brooks' niece), Woodard's father, Woodard's children, and some of Woodard's siblings. This search warrant was obtained after an undercover ATF agent, on February 28, 2007, purchased crack cocaine pursuant to a telephone order from a person, later identified as co-conspirator Isaac Spencer, outside of Brooks' residence. After the agent completed his drug transaction, Spencer went back into Brooks' residence and, shortly thereafter, another ATF agent performing surveillance observed what appeared to be two more hand-to-hand narcotics transactions outside of the residence.

Before the execution of the search warrant, a Detroit police officer working with the ATF task force performed surveillance on Brooks' residence. During that surveillance, the officer observed, within about twenty minutes, two men pull up in a vehicle, one man exit the vehicle and enter Brooks' residence, what appeared to be two hand-to-hand narcotics transactions take place between the initial vehicle and two different vehicles pulling up to the residence, and then the original vehicle leaving the scene. About a half-hour later, officers executed the search warrant. Upon entering the residence, the officers saw Brooks sitting on the couch in the living room, so they immediately secured him and began a search of the premises. The officers encountered other people, including children, inside the residence when conducting their search. In Brooks' pants pockets, officers found $1210 and a loaded pistol. In a statement to the officers during the search, Brooks admitted that the gun was his and claimed that over $800 of the money was his from selling his car,

but that the rest was given to him by his nephew, Madison, to hold while he was gone. Officers also discovered several firearms, ammunition, and 11.42 grams of crack cocaine in a bedroom in the southwest corner of the residence. When asked by an officer which bedroom was his, Brooks indicated it was the southwest corner bedroom. Brooks suggests, on appeal, that the southwest corner bedroom, in which the cocaine, firearms and ammunition were found, was Madison's, and not his, bedroom. However, additional evidence at trial showed that the bedroom was at least shared by Brooks and Madison. In any event, Brooks admitted to knowing that the weapons and ammunition were in the bedroom, though he claimed they were not his, but asserted that he did not know about the drugs.

Brooks was indicted and tried in federal court on four counts: (1) conspiracy to possess with intent to distribute, and to distribute, more than fifty grams of cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1); (2) aiding and abetting the possession of more than five grams of cocaine base with an intent to distribute in violation of 18 U.S.C. § 2(a) and 21 U.S.C. § 841(a)(1); (3) maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(2); and (4) possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).

At trial, Joe Nether, an ATF agent, testified about his involvement with a task force investigating armed drug dealers in northwest Detroit. Nether explained that, while working undercover, he learned about drug deals being conducted through the use of cellular telephones—purchasers would call a certain phone number to order crack cocaine, and then the individual answering would arrange for a place to meet to exchange money for drugs. The search

of Brooks' residence arose out of Nether's undercover investigations. Initially, Nether was investigating a street gang called the Detroit Thug Lords, but, while he was making an undercover drug purchase from that gang, he encountered two members of another gang called the 952 Boys. These two members later gave Nether their cellular phone number and offered to supply crack cocaine to him in the future. Accordingly, Nether began arranging deals through this phone number and met with many of Brooks' alleged co-conspirators, including Gary Young, Damien Hawkins, Scott McDuffie, Anthony Mack and Reginald Gilder. Nether stated that the ATF task force seized more than sixty grams of crack cocaine during the investigation of this conspiracy, and that they were able to identify additional sales in which the quantities exceeded that amount. Nether testified that his deals through this phone number eventually led him to Brooks' residence on February 28, 2007, when Nether called in an order and was told to come to the street on which Brooks' residence was located to complete the purchase.

A few of Brooks' alleged co-conspirators also testified at his trial, including his nephew, Madison. Madison acknowledged that he had been charged with conspiracy to distribute crack cocaine and had entered into a plea agreement with the Government. Moreover, Madison admitted that he was involved with the 952 Boys and assisted in selling crack cocaine through the use of cell phones. Madison testified that the drugs found during the search were his, and that he had obtained them through the 952 Boys, but that Brooks did not know they were in the bedroom. In addition, Madison testified that he gave Brooks around $300 to hold, which Madison had obtained from selling drugs, and that Brooks knew it was drug money. Moreover, Madison testified that a half-

ounce of crack cocaine, which is equivalent to 28.350 grams, generally sold for about $300 or $325. Though, at trial, Madison denied his uncle's involvement in the conspiracy, Madison's conflicting grand jury testimony conveyed that Brooks knew Madison was selling drugs out of the residence, that Brooks received payment in exchange for letting other people sell drugs out of the house, and that Brooks was also selling his own drugs. At trial, Madison testified that Brooks would "run off" members of the gang because they were making the house "hot," but also that Brooks received compensation for letting these members sell drugs from the residence. Finally, Madison testified that Brooks carried a handgun, that Madison did not, and that the firearms in the bedroom belonged to Brooks, not Madison.

Gary Young, another alleged co-conspirator, and the apparent leader of the 952 Boys, also testified at Brooks' trial. Young also acknowledged that he had been charged in the conspiracy at issue, had entered a plea agreement with the Government, and had been sentenced to twenty years imprisonment. In terms of Brooks' involvement with the conspiracy, Young testified that Brooks helped him start his organization by assisting him in acquiring his cellular phone and some drugs. Further, Young alleged that Brooks was one of Young's "reload men," meaning Brooks' residence served as a location where other members of the conspiracy could come and replenish their supply of drugs before going back on the street to sell them, and that Young paid Brooks one thousand dollars a month for this service. Young also claimed that Brooks let Young cook crack cocaine at Brooks' residence on a number of occasions, and that Young paid Brooks one hundred dollars each time Brooks let Young cook there. Finally, Young testified that Brooks would sometimes answer

the 952 Boys' cellular phone and "hit some of the customers," i.e., fulfill their crack cocaine orders, and that there were guns at Brooks' residence and Brooks also carried a gun.

The third alleged co-conspirator to testify in Brooks' trial was Antoine Bankhead. Like Madison and Young, Bankhead acknowledged that he had been convicted as a part of the conspiracy, and that he had entered a plea agreement with the Government. Though Madison earlier alleged that Brooks did not even know Bankhead, Bankhead testified that he and other members of the conspiracy used Brooks' residence for drug trafficking. Moreover, Bankhead stated that Brooks was present at the residence when drug transactions occurred, and that Bankhead personally received crack cocaine from Brooks when Brooks was acting as a "reload man." In addition, Bankhead testified that Brooks used the cellular phone with which drug orders were taken, and that Brooks would let Gary Young cook crack cocaine at Brooks' residence. Finally, Bankhead testified that Brooks carried a small handgun while selling crack cocaine to customers during the time of the conspiracy at issue.

Brooks himself also testified. Brooks denied having control over the residence, asserting instead that his niece and her father, Darryl Woodard, handled all of the living expenses. In addition, Brooks claimed he did not allow drugs to be stored in the residence, cooked at the residence, or distributed from the residence. Brooks denied selling drugs with Young, lending Young money to start up his cellular phone, or giving Young any connections to drugs. Though Brooks admitted knowing that Madison was involved with Young's drug conspiracy, Brooks testified that he told Madison not to get involved with Young, but Madison continued to sneak around dealing drugs for

Young. Brooks also testified that he told Young, McDuffie and Spencer not to come in the residence when he saw that they were engaging in drug deals, but that Brooks did not know Bankhead and that he had not been inside Brooks' residence. In describing the March 2, 2007 raid, Brooks explained that $960 of the money officers confiscated was from a car he had sold a few days before, and that the rest was money Madison had asked him to hold. However, Brooks admitted that he knew this latter amount of money was drug money. Brooks also admitted that he was carrying a gun on the day of the search, but claimed that he did not have the gun to protect the drugs. Instead, Brooks said that he "had the gun because [he] was trying to keep them guys away from that house," and because he was sick and needed it to protect himself. As to the firearms found in the bedroom, Brooks claimed that only one rifle was his and that the rest of the firearms and ammunition were there when he moved into the house. On cross examination, Brooks admitted having some knowledge about crack cocaine, alleging that he had sold it sometime between 1998 and 2001 and that he had used it as recently as June or July 2007.

At the conclusion of the Government's case, Brooks moved for a judgment of acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29. After some discussion, the district court took the motion under advisement and gave the Government time to brief the issue. Upon completion of his case, Brooks renewed this motion. The district court denied the motion with respect to counts 1, 3 and 4, but granted the motion with respect to count 2, which involved aiding and abetting the possession of more than five grams of cocaine base with intent to distribute. In so holding, the district court noted that the issue was "whether there is sufficient evidence in the record

from which a reasonable jury could infer or conclude beyond a reasonable doubt that all the elements of the crime have been established." The district court explained that it did not "believe that there is any evidence in the record that Mr. Brooks knew that the cocaine specifically found in the [bedroom] was in the house or that he was in possession of it." Thus, according to the district court, the "question [was] . . . whether that guilty knowledge can be inferred, and the law . . . is that if there is evidence that someone is participating in a conspiracy, they can be responsible for the substantive offenses that are reasonably foreseeable as falling within the scope of the conspiracy." The district court continued, "the problem with [foreseeability] is that in this particular case with this particular count the only evidence with respect to actual ownership came from Mr. Madison and he testified that he actively attempted to conceal the ownership of the cocaine, and in fact, its presence from . . . the Defendant." Accordingly, the district court ruled that "no reasonable jury could find the essential elements of Count 2 beyond a reasonable doubt," and granted the motion for a judgment of acquittal with respect to that count, thus, withdrawing it from the jury.

After ruling on that motion, the district court read the jury instructions, heard the parties' closing arguments, and went over the verdict form without objections from either side. In regard to count 1, the district court instructed the jury that the Government must prove three elements: (1) "that two or more people conspired or agreed to commit the crime either of possession with intent to distribute or distribution of cocaine base;" (2) "that [Brooks] knowingly and voluntarily joined the conspiracy intending to help advance or achieve one of its goals;" and (3) that "the amount of

cocaine base for which [Brooks] was accountable was fifty grams or more." As to the quantity element, the court further explained,

> [Y]ou should include, *but are not limited to* any amounts actually possessed or distributed by [Brooks] in connection with the conspiracy. You should also consider any quantities of cocaine base that [Brooks] understood would be processed with the intent to distribute or distributed in the course of the conspiracy by [Brooks] *or by another member of the conspiracy*, whether or not charged.

(Emphasis added.) The district court instructed that, if the jury could not agree as to fifty grams of cocaine base, it "must then go on to consider whether the Government has proved the lesser charge of conspiracy to possess with intent to distribute at least five grams, but less than fifty grams of cocaine base." This lesser charge, the court explained, includes the same three elements listed above, except the third requires only that Brooks be accountable for five grams or more, but less than fifty grams, of cocaine base.

As to count 4, the district court instructed the jury that the Government must prove four elements: (1) "on or about the date charged, that [Brooks] possessed one or more of the firearms listed in the indictment;" (2) "that [Brooks] knew what he possessed was a firearm;" (3) "that [Brooks] committed a drug trafficking crime on or about the date charged;" and (4) "that the firearm possession was in furtherance of that drug-trafficking crime." As to the third element, the court explained, "A conspiracy to possess with intent to distribute or distribute cocaine base *and* controlling a place for the purpose of distributing drugs are drug-trafficking crimes." (Emphasis added.) Further, as to the fourth element, the district court instructed that "[a] firearm is possessed in furtherance of a drug-trafficking crime if there was some relationship between the Defendant's

purpose for possessing a firearm and the drug crime, even if the connection is not the only reason for which the Defendant possessed . . . the firearm." The court continued,

> Such a relationship might exist if you find, for example, that [Brooks] possessed the firearm to protect the drugs or the proceeds from the drug sales or otherwise facilitate a drug transaction, execution of the transaction, the escape or the likely response to contingencies that might have arisen during the commission of a crime.

The jury found Brooks guilty of conspiracy to possess with intent to distribute, or to distribute, more than five grams, but less than fifty grams, of cocaine base; guilty of controlling and making available a residence for the purpose of manufacturing, storing, or distributing cocaine base; and guilty of possessing a firearm in furtherance of a drug-trafficking crime. The district court sentenced Brooks to concurrent sixty-month prison terms on the conspiracy and premises counts, and to a consecutive sixty-month term on the firearm count. Brooks now appeals, claiming insufficient evidence to convict on the conspiracy and firearm counts.

## II.

As outlined above, the Government presented ample evidence of Brooks' participation in a conspiracy to possess with intent to distribute, and distribute, cocaine base. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Brooks' main argument on appeal is that the evidence was sufficient only to show a conspiracy to possess over fifty grams, in light of the district court's having thrown out the only part of the case dealing with an amount between five and fifty grams. The district court's acquittal on count 2, according to Brooks, demonstrates that there is not sufficient

evidence to link him to the lesser amount of crack cocaine found in his residence and, thus, convict him of count 1, conspiracy as to an amount of more than five, but less than fifty, grams.

The Government argues with some force that sufficient evidence to support a greater amount is inherently sufficient to support a lesser amount. The jury may have given only partial credence to some testimony, or may merely have been lenient. The argument is supported by the reasoning in the somewhat analogous line of cases upholding conflicting verdicts. *See, e.g.*, *United States v. Powell*, 469 U.S. 57, 62-66 (1984). We need not rely on that legal argument, though, because there *is* evidence in this case from which the jury could have found conspiracy to possess an amount between five and fifty grams.

A.

First, there is the 11.42 grams found in the bedroom. Although the district court held that there was not sufficient evidence to convict Brooks of aiding and abetting in the possession of the drugs in the bedroom, the same drugs could be attributed to Brooks for purposes of the conspiracy count, because a conspiracy count requires less knowledge of particular drugs possessed by a co-conspirator than a count for aiding and abetting.

Count 2 charged Brooks with aiding and abetting the possession of more than five grams of cocaine base with intent to distribute in violation of 18 U.S.C. § 2(a) and 21 U.S.C. § 841(a)(1), and required proof that Brooks "*knew* that the principal[] possessed cocaine with the intent to distribute it, and that [Brooks] assisted in [the principal's] plan to deliver the cocaine." *United States v. Ledezma*, 26 F.3d 636, 641 (6th Cir. 1994) (emphasis added) (citing *United States v. Pena*, 983 F.2d

71, 72 (6th Cir. 1993)). Because there was no "evidence in the record that Mr. Brooks knew that the cocaine specifically found [in the residence] was in the house or that he was in possession of it," the district court found Brooks could not be criminally liable under count 2. Unlike count 2, count 1 only required proof that Brooks willfully became a member of a conspiracy and that one of the conspirators knowingly possessed with an intent to distribute, or distributed, less than fifty grams, but more than five grams, of crack cocaine. *See United States v. Meyers*, 646 F.2d 1142, 1143-44 (6th Cir. 1981). Moreover, "[t]he government need not show that [Brooks] participated in all aspects of the conspiracy; it need only prove that [Brooks] was a party to the general conspiratorial agreement." *United States v. Barrett*, 933 F.2d 355, 359 (6th Cir. 1991) (citing *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986)). In other words, Brooks could be convicted under count 1 even if he did not know the specific amount of cocaine possessed by any of his co-conspirators at any given time, as long as his co-conspirator intended to possess with an intent to distribute, and that intention was in furtherance of the conspiracy and reasonably foreseeable to Brooks. *See Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946); *United States v. Myers*, 102 F.3d 227, 237 (6th Cir. 1996).

The Government provided sufficient evidence for a rational jury to find beyond a reasonable doubt that Brooks willfully became a member of a drug conspiracy, that one of Brooks' co-conspirators—specifically, Darryl Madison—intended to possess with an intent to distribute, or to distribute, more than five grams, but less than fifty grams, of crack cocaine, and that Madison's intention was in furtherance of the drug conspiracy and was reasonably foreseeable to Brooks. In

regard to Brooks' willfully becoming a member of a drug conspiracy, both Gary Young and Antoine Bankhead testified to Brooks' involvement with the 952 Boys. Young explained that Brooks helped Young start up his organization, sometimes let him cook the crack cocaine in the residence, and acted as a "reload man" for him. Moreover, Bankhead confirmed that Brooks was involved in the drug conspiracy and that its members used Brooks' residence as part of the conspiracy. Even Brooks' nephew, Madison, admitted that Brooks was paid for letting the members of the conspiracy sell drugs out of the residence, and that Brooks knew Madison was selling drugs out of the house and did not try to stop him. As for the underlying substantive drug offense, it is undisputed—as Madison has admitted—that the 11.42 grams of crack cocaine found in Brooks' residence belonged to Madison and were possessed by Madison with the intent to distribute them as part of the drug conspiracy. Madison's intent to distribute the drugs found in the residence was in furtherance of the drug conspiracy, as the drugs were provided to him by one of his co-conspirators, and Madison admitted that they belonged to the 952 Boys' organization. Finally, Madison's possession with an intent to distribute the 11.42 grams of cocaine was reasonably foreseeable to Brooks, since Brooks knew Madison was selling drugs out of the residence, Brooks received compensation for allowing members of the conspiracy to sell drugs out of the residence, and Madison gave Brooks $300, in what Brooks knew to be drug money, to hold on the day of the search.

B.

Second, even if the drugs in the bedroom were not attributed to the conspiracy, Brooks' possession of the $300 of Madison's money, which Brooks knew was drug money, was sufficient

to connect him to a conspiracy involving more than five grams, but less than fifty grams, of cocaine base. Madison testified that a half ounce of crack sold for around $300, and the district court instructed the jury that one ounce of cocaine was equivalent to 28.350 grams. Thus the handing over of the money alone was enough to support the jury's verdict because Brooks could be tied to the lesser amount of crack cocaine through his retention of this drug money. Considering the testimony of the co-conspirators connecting Brooks to the 952 Boys' conspiracy in conjunction with his possession of the $300 in drug money, the jury had sufficient evidence upon which to convict Brooks of a conspiracy to possess with intent to distribute, or to distribute, more than five grams, but less than fifty grams, of cocaine base.

There are accordingly two independent evidentiary bases for the jury to have found Brooks guilty of conspiracy with respect to an amount between five and fifty grams.

**III.**

There was also sufficient evidence to convict Brooks under 18 U.S.C. § 924(c)(1)(A)[1] notwithstanding Brooks' argument that the Government failed to prove that he possessed firearms

---

[1]This provision states:

Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, [be sentenced to the mandatory terms provided in the statute].

*in furtherance of* a drug-trafficking crime. The Government demonstrated the appropriate nexus between the firearms found and the drug conspiracy. Brooks does not dispute that he possessed firearms, but instead argues that the Government failed to establish the required connection between his firearms and a drug-trafficking offense. This court has explained the meaning of the "in furtherance of" language at issue as follows:

> The government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. Rather, the government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity.

*United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001) (quoting H.R. Rep. No. 105-344 (1997), 1997 WL 668339, at *11-12). This language imposes a slightly more stringent requirement than the "during and in relation to" language, which "modif[ies] the use and carry prongs of the statute." *Id.* This court has also noted that "the possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction," but instead "the firearm must be strategically located so that it is quickly and easily available for use." *Id.* at 462. Additional factors "relevant to a determination of whether the weapon was possessed in furtherance of the crime" include, but are not limited to, the following: "whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id.*

Applying these factors to Brooks' case, it is clear that the Government presented sufficient evidence to prove that Brooks possessed firearms in furtherance of a drug-trafficking crime. First,

on the day of the search, ATF agents found firearms both on Brooks' person and under the bed in the bedroom that Brooks shared with Madison and in which agents also discovered 11.42 grams of crack cocaine. These firearms were not only easily accessible to Brooks, but were also found inside a residence that was used to conduct drug activity, in close proximity to narcotics, and along with drug money, which would allow a reasonable jury to believe that Brooks possessed the gun in furtherance of drug transactions or in furtherance of maintaining a drug-involved premises. Moreover, the first ATF agent through the door during the search testified that Brooks was sitting on the couch when the agents entered the residence. This, combined with the fact that Brooks had a loaded gun and drug money in his pants pockets, supports an inference by the jury that Brooks was standing guard over the drug-involved residence. Finally, Brooks' co-conspirators testified that Brooks carried a gun, and that he kept this gun on him while selling drugs during the conspiracy. This evidence would permit a rational jury to conclude beyond a reasonable doubt that Brooks carried the gun to facilitate a drug-trafficking crime.

In cases with similar evidence, this court has upheld convictions under § 924(c). For example, in *Mackey*, this court found that "there was an illegally possessed, loaded, short-barreled shotgun in the living room of the crack house, easily accessible to the defendant and located near the scales and razor blades." *Id.* With that evidence, this court held that "a reasonable jury could infer that the purpose of the firearm was to provide defense or deterrence in furtherance of the drug trafficking for which [the] defendant was arrested." *Id.* at 462-63. Likewise, in *United States v. Swafford*, 385 F.3d 1026 (6th Cir. 2004), this court relied on the following facts:

> [The defendant's] .45 caliber pistol was strategically located so that it was quickly and easily available for use. The gun was found loaded, with its handle pointing up, within arm's reach of the bed where [the defendant] was lying. . . . Finally, the gun was discovered as the officers executed a search warrant looking for drugs, which they ultimately found.

*Id.* at 1029. Even though the drugs were not found in the same room as the gun, the *Swafford* court held, upon considering this evidence, that the weapon was possessed in furtherance of drug trafficking, and reasoned that "the gun seems much more useful for protection purposes if kept close to [the defendant], the potential user, rather than close to the drugs." *Id.* Finally, in *United States v. Harris*, No. 09-5220, 2010 WL 3398872 (6th Cir. Aug. 27, 2010), this court noted three key pieces of evidence in finding sufficient evidence for a § 924(c) conviction—the defendant's "residence itself was central to his drug activity" because he dealt drugs out of the residence, "at least one gun was located in extremely close proximity to crack cocaine," and "all five handguns that were found were loaded and not safely secured, meaning they could be used immediately." *Id.* at *3. Because the facts of Brooks' case are analogous to these prior cases, the jury had sufficient evidence to find the required nexus between the firearms discovered and the drug-trafficking crimes at issue.

Brooks also alleges that the district court erred in failing to provide a limiting instruction for the jury to disregard an ATF agent's testimony regarding Brooks' intent, but, at worst, this would be harmless error. Brooks contends that this testimony should be excluded, and that, without it, there is insufficient evidence to convict Brooks under § 924(c). In particular, Brooks challenges the following testimony of Agent Eric Kimble:

> Q: On this particular occasion, you recovered both guns and drugs, correct?
> A: Guns and drugs were located in the house, yes, sir.

> Q: Okay, based on what you know of your investigation and this particular location, did that mean anything to you?
> A: Yes, it did.
> Q: What did it mean to you?
> A: It meant that the weapons were there to protect the narcotics.

The district court sustained the defense's objection to this line of questioning, but the defense did not ask for the court to instruct, and the court did not instruct, the jury to disregard this testimony. Assuming without necessarily deciding that this testimony was inadmissible, this court "can reverse only for plain error affecting substantial rights," since Brooks failed to object at trial to the lack of a limiting instruction. *United States v. Christian*, 786 F.2d 203, 214 (6th Cir. 1986) (citing Fed. R. Crim. P. 52(b)). "Under plain error review, [the defendant] must show that the error 'affected substantial rights' and that it 'seriously affected the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Smith*, 601 F.3d 530, 541 (6th Cir. 2010) (quoting *United States v. Jones*, 108 F.3d 668, 670 (6th Cir. 1997) (en banc)). Moreover, "[t]o show that the error affected substantial rights, [the defendant] must generally show that the error was prejudicial, that is, that it affected the outcome of the district court proceedings." *Id.* (quoting *Jones*, 108 F.3d at 672).

The district court's failure to provide a limiting instruction as to Agent Kimble's testimony does not amount to plain error. Even without this testimony, the record contains compelling evidence to convict Brooks under § 924(c). As discussed above, the evidence at trial showed that Brooks possessed loaded firearms on the day of the search, that drugs were found in execution of that search near some of Brooks' firearms, that Brooks' residence was involved in the drug conspiracy, and that Brooks carried a gun with him while engaging in drug activities. In addition, Brooks did

not object to, and has not challenged on appeal, the trial testimony of Agent Nether, who explained that "[t]ypically, drug dealers would keep, you know, long guns in a residence to protect the residence, but when they are actually—the guns they actually keep on their person all the time would usually be a smaller handgun." This testimony, combined with the previously discussed evidence, could have led the jury to conclude beyond a reasonable doubt that Brooks possessed firearms at least to protect his drug-involved premises, if not also to facilitate drug transactions. Accordingly, the lack of a limiting instruction in regard to Agent Kimble's testimony did not unfairly affect the outcome of the proceedings against Brooks.

Finally, Brooks claims that there is insufficient evidence to convict him under 18 U.S.C. § 924(c)(1)(A) because the Government failed to prove the existence of a drug-trafficking crime, but, as explained above, there was sufficient evidence to convict Brooks of conspiracy to possess with intent to distribute, or to distribute, more than five, but less than fifty, grams of cocaine base. The firearms provision at issue defines "drug trafficking crime" for purposes of § 924(c) as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46." 18 U.S.C. § 924(c)(2). This definition includes both conspiracy to possess with an intent to distribute, or to distribute, cocaine base, and maintaining a drug-involved premises, as both are drug-trafficking crimes under the Controlled Substances Act. Brooks did not challenge his conviction on count 3 of the indictment, for maintaining a drug-involved premises, in this appeal. Accordingly, even if there were not sufficient evidence to convict Brooks under count 1, Brooks could be convicted under §

924(c)(1)(A) for possessing a firearm in furtherance of maintaining a drug-involved premises. Thus

the Government did produce sufficient evidence to sustain Brooks' conviction under count 4.

**IV.**

For these reasons we affirm the judgment of the district court.