RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0317p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 10-3034

RONALD KELSOR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 08-00081-005—James L. Graham, District Judge.

Argued: November 16, 2011

Decided and Filed: December 20, 2011

Before: GUY, KETHLEDGE, and WHITE, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Kevin Michael Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Mary B. Young, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee. **ON BRIEF:** Kevin Michael Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, Frederick D. Benton, Jr., Columbus, Ohio, for Appellant. Mary B. Young, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

———————————

**OPINION**

———————————

RALPH B. GUY, JR., Circuit Judge. Defendant Ronald Kelsor appeals following his conviction on all twenty-two counts arising out of his involvement in the distribution of heroin over a four-year period in and around Columbus, Ohio. The district court sentenced defendant to a mandatory minimum term of life imprisonment

1

for conspiracy to distribute and to possess with intent to distribute more than 1,000 grams of heroin, and imposed concurrent sentences for all but two of the other offenses. Consecutive sentences were imposed on each of two convictions for possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Defendant challenges (1) the sufficiency of the evidence to support the § 924(c) convictions, (2) the admission of certain coconspirator statements under Fed. R. Evid. 801(d)(2)(E), (3) the allowance of testimony regarding recorded calls to which the witness was not a party, and (4) the failure to give a requested jury instruction regarding multiple conspiracies. With respect to his sentences, defendant argues (1) that the notice of enhanced penalties was defective, (2) that it was error to impose consecutive sentences for the § 924(c) convictions, and (3) that the sentence of life imprisonment violated double jeopardy and constituted cruel and unusual punishment. After careful review of the record, we affirm.

## I.

Defendant Ronald Kelsor came to the attention of law enforcement in 2007, when he was observed selling heroin to several individuals during a drug investigation in Union County, Ohio. Further investigation—including controlled purchases, surveillance, and use of a "pen register" for a cell phone number belonging to defendant—led to court-authorized wiretaps on defendant's phone and later for the phones of two others. Defendant's calls were monitored between February and April 2008, and surveillance during that time corroborated that the phone was being used to arrange the purchase and sale of heroin.

Cooperating witnesses provided testimony at trial concerning the existence, scope, and operation of the conspiracy to distribute or to possess with intent to distribute more than 1,000 grams of heroin in the Columbus area from 2004 until 2008 (count 1). The monitored calls provided the basis for the multiple counts of using a telephone to facilitate the charged conspiracy (counts 4-18). Defendant's substantive drug and firearm convictions arose from the seizure of heroin and firearms from two locations during the execution of search warrants on April 21, 2008 (counts 2-3, 19-22).

There was testimony that prior to 2006, defendant lived with coconspirators Ernestine Bankston and Victor Woodson in the Clifton Apartments in Columbus, Ohio. There, defendant, Bankston, Woodson, and others prepared and packaged heroin for delivery to roughly twenty customers per day. Defendant moved to 703½ Kossuth Street in Columbus, Ohio, where he lived with Bankston, Woodson, and Elisha Collins. Defendant, Bankston, Woodson, Collins, and Billy Lee prepared and distributed heroin on a daily basis working at a black card table in the living room of the Kossuth Street residence. On the card table would be heroin, a grinder, bags, pen and paper to take phone orders, and firearms. In October 2007, wanting to be away from the heroin operation at night, defendant and Bankston began living at 1722 South Hamilton Road in Columbus. Woodson continued to live at the Kossuth address, where heroin was prepared and distributed on a daily basis. Defendant met one of his suppliers at the Hamilton Road address, and kept drugs, money, and a firearm in the bedroom he shared with Bankston.

Defendant had several sources, including David McReynolds who delivered up to 50 grams of heroin on more than 30 occasions, and Edmund Plunk who delivered, or directed that Mandell Cantrell deliver, between 20 and 60 grams on more than 50 occasions. The heroin prepared by defendant and his coconspirators was sold to customers who both used and resold the heroin to others. Those customers included Mitchell Wood, Paul Coon, Mark Dowdy, Charles Carmichael, Keith Herdman, Andrea Herdman, Kristine Dixon, and Karessa Dixon. Carmichael testified that he purchased heroin from the defendant between 2004 and 2008; usually purchased between two and five bundles of ten bags each (or two to five grams) of heroin; and, by the end of that period, was calling to arrange a purchase every day or every other day.

Mitchell Wood traveled from Athens County, Ohio, to purchase heroin from the defendant on almost a daily basis between May 2007 and April 2008. Wood testified that he purchased heroin in quantities ranging from three to twenty-eight bundles, and estimated that he obtained a total of more than 1,000 grams of heroin from the defendant. Wood explained that he sometimes brought others with him to purchase heroin and that,

when he did, they would pool their money and have only one person conduct the transaction.

Multiple search warrants were executed on April 21, 2008, including at both the Kossuth Street and Hamilton Road residences.  Defendant was arrested at the Kossuth address, where 16 grams of heroin, a scale, packaging materials, and two firearms were also found.  Specifically, agents seized a Rexio revolver that was on the bed and a Hi Point .380 semiautomatic pistol from the living room closet.  At 1722 South Hamilton Road, a Bersa Thunder .380 handgun was found in the bed located in the bedroom that defendant shared with Bankston.  In that bedroom, agents also found $7,040 in cash and a safe containing 60 grams of heroin, bottles of pills, and documents.  A separate search warrant executed at a residence known to be used by Plunk resulted in the seizure of more than 1,300 grams of heroin.

Although twenty-five defendants were charged in the original indictment, defendant was the only person charged in the second superceding indictment filed shortly before trial.[1]  At the conclusion of a five-day trial, the jury found defendant guilty on all counts.  The government had filed an information pursuant to 21 U.S.C. § 851 identifying a number of prior convictions as the basis for statutorily enhanced penalties.

Based on a finding that defendant had two or more prior felony drug convictions, the district court imposed a mandatory term of life imprisonment for the conspiracy conviction pursuant to 21 U.S.C. § 841(b)(1)(A) (count 1).  Along with that life sentence, the court imposed concurrent sentences of:  360 months in prison on each of two counts of possession with intent to distribute heroin (counts 2-3); 120 months in prison on each of two counts of being a felon in possession of a firearm (counts 21-22); and 48 months in prison on each of fifteen counts of using a telephone to facilitate the charged conspiracy (counts 4-18).  *See* 21 U.S.C. §§ 841(a)(1) and 843; 18 U.S.C. § 922(g)(1).  In addition, the court imposed mandatory consecutive sentences of 60

---

[1]Defendant had entered a guilty plea, which he successfully moved to withdraw.

months for the first § 924(c) conviction, and 300 months for the second § 924(c) conviction (counts 19-20). *See* 18 U.S.C. § 924(c)(1)(C) and (c)(1)(D)(ii). This appeal followed.

## II.

### A.     Sufficiency of Evidence

The denial of a defendant's motion for acquittal challenging the sufficiency of the evidence is reviewed *de novo*. *United States v. Mabry*, 518 F.3d 442, 447-48 (6th Cir. 2008). The relevant question on direct appeal is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In making this determination, "we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994).

Challenging only his § 924(c) convictions, defendant argues that the evidence was insufficient to establish that he possessed the firearms "in furtherance of" a drug trafficking crime. "Possession may be actual or constructive, and need not be exclusive." *United States v. Jenkins*, 593 F.3d 480, 484 (6th Cir. 2010). Constructive possession is established when a defendant "'knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005) (citation omitted). There is no serious claim on appeal that the evidence was insufficient to establish defendant's constructive possession of the firearms seized from the Kossuth and Hamilton addresses. Rather, the crux of defendant's claim is that the evidence was insufficient to establish the "in furtherance of" requirement.[2]

---

[2]Section 924(c) criminalizes two distinct offenses: using or carrying a firearm during and in relation to a drug offense, and possessing a firearm in furtherance of a drug offense. *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004). Only the latter was charged in this case.

In the context of § 924(c), the term "in furtherance of" means that "the weapon must promote or facilitate the crime." *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001).  We have explained that "possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction." *Id*. at 462.  "In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use." *Id*.  Other relevant factors include "whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id*.  In this case, there was ample evidence from which a rational trier of fact could conclude that defendant possessed the firearms in furtherance of the drug offenses, and that "the firearm's presence in the vicinity of the crime  was something more than mere chance or coincidence." *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004).

Defendant was arrested at the Kossuth address, which had been leased by him and was his primary residence until October 2007.  After he and Bankston began living at the Hamilton address, they still went to the Kossuth address every day to engage in heroin distribution activities and "would close up shop" in the evening.  Collins and Woodson testified that defendant told them that he kept the firearms in case someone tried to rob him.  Woodson also feared being robbed, and began sleeping with the Rexio revolver after defendant and Bankston began staying at the Hamilton address.  In fact, agents found the Rexio revolver on the bed.  The Hi Point semiautomatic pistol was found on the top shelf of the livingroom closet, which was the same closet where agents found the 16 grams of heroin, a scale, and packaging materials.  Bankston testified that the firearms would be at the card table while they prepared heroin for distribution, usually right next to defendant, and that she saw both defendant and Woodson handle the firearms.

At the Hamilton Road address, agents found the Bersa Thunder pistol in the bed that defendant shared with Bankston.  In that same bedroom, agents found more than $7,000 in cash and a safe that contained 60 grams of heroin.  Also, Cantrell testified that

he delivered, or was along when Plunk delivered, heroin to defendant at the Hamilton Road address on a number of occasions. Bankston stated that the defendant kept the firearm in the safe in the bedroom or under his pillow.

Defendant stipulated that, as a convicted felon, he could not legally possess a firearm. The firearms were possessed illegally, were strategically located so as to be quickly and easily available for use, and were constructively possessed for protection against robbery in the context of an ongoing heroin distribution operation. Because a reasonable juror could conclude that there was a connection between defendant's constructive possession of the firearms seized from the Kossuth Street and Hamilton Road residences and the underlying drug offenses, the evidence was sufficient to support defendant's convictions for possession of a firearm in furtherance of a drug trafficking crime. *See United States v. Swafford*, 385 F.3d 1026, 1028-29 (6th Cir. 2004); *United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004).[3]

## B.    Coconspirator Statement

For an out-of-court statement to be admissible under Fed. R. Evid. 801(d)(2)(E), the offering party must establish by a preponderance of the evidence that a conspiracy existed, that the defendant was a member of the conspiracy, and that the coconspirator's statement was made during the course and in furtherance of the conspiracy. *See United States v. Wilson*, 168 F.3d 916, 920 (6th Cir.1999); *United States v. Clark*, 18 F.3d 1337, 1341 (6th Cir. 1994). These findings, often referred to as *Enright* findings, must be made by the district court. *See United States v. Enright*, 579 F.2d 980, 986-87 (6th Cir. 1978). If the statement is admitted conditionally but the government fails to carry its burden by a preponderance of the evidence, the district court should grant a mistrial

---

[3]The government also argues that proof of a sufficient nexus is further supported by evidence that defendant took a firearm from Coon in partial payment for heroin. *United States v. Frederick*, 406 F.3d 754, 764 (6th Cir. 2005) (holding that acquisition of a firearm in exchange for drugs is a sufficient nexus to establish possession in furtherance of the drug sale). Defendant points out that, although Coon's handgun was described as a silver and black .380 caliber handgun with a "loose slide," no witness identified it to be one of the seized firearms. Nor did the government represent otherwise in closing, noting only that two of the seized firearms were silver and black .380 caliber handguns.

unless convinced that a cautionary instruction would shield the defendant from prejudice. *See United States v. Vinson*, 606 F.2d 149, 153 (6th Cir. 1979).

The government elicited through Wood an out-of-court statement by Coon indicating that Coon intended to trade a handgun to defendant in partial payment for heroin. Over defense counsel's objection and despite an attempt to impeach Wood with his prior grand jury testimony, the district court found that the statement was admissible under Rule 801(d)(2)(E) and denied defendant's motion for a mistrial. This court reviews the district court's conclusions of law *de novo*, and its factual determinations for clear error. *See United States v. Payne*, 437 F.3d 540, 544 (6th Cir. 2006).

Defense counsel's hearsay objection was initially sustained, but the government's proffer satisfied the district court that the necessary showing could be made under Rule 801(d)(2)(E). By way of foundation, Wood testified that on one occasion when he and Coon drove to Columbus to obtain heroin from defendant, Coon had a silver and black .380 caliber handgun with him. When they got there, Coon got out of the car with money and the handgun and returned to the car with the heroin and without the handgun. Then, over defense counsel's continuing objection, Wood testified as follows:

> Q: At any point in time, sir, did Mr. Coon explain to you why he brought that .380 with him?
>
> A: Yes he did.
>
> Q: What did he tell you?
>
> A: He was short on his money, his part of the money, and he had asked Ron [Kelsor] if he would take the gun in exchange for the rest of the money that he owed for the heroin.

On cross-examination, defense counsel attempted to impeach Wood with his statement before the grand jury that he "found out about it later." Wood clarified on redirect examination, however, that Coon told him about trading the handgun to the defendant on the way to Columbus, and that what Wood did not find out about until later was that Coon had told the defendant that Wood was planning to rob him (apparently in

an effort to persuade the defendant to take the handgun). As the prosecutor emphasized during the redirect examination, Wood testified before the grand jury that Coon "discussed it on the phone with Ron [Kelsor] before he picked me up. Then told me he was selling the gun, but never told me why. I found it out later." To clarify, Wood was asked before the grand jury: "So you didn't know that Paul [Coon] had told Ron Kelsor that you were going to rob him until afterwards? You found that out afterwards?" Wood answered, "Correct."

Defense counsel renewed the objection, moving to strike the testimony and for a mistrial. The district court heard arguments, reviewed the relevant grand jury testimony, and commented that the jury might have to resolve the question of whether Wood's testimony was inconsistent about when Coon made the statement. Seizing on that comment, defendant argues that the district court erred by giving weight to the jury's obligation to assess credibility in deciding the threshold question of admissibility. On the contrary, the district court's ruling on the motion the following morning explicitly recognized that the question of admissibility was a matter for the court to determine and that the jury was not to be instructed on the issue.[4]

In deciding the motion, the district court articulated the proper standards, made explicit findings with respect to each of the *Enright* findings, concluded that the statement was properly admitted, and denied the motion for a mistrial. Defendant does not contest the district court's findings that a conspiracy existed; that defendant, Wood, and Coon were all members of that conspiracy; or that defendant knew that Wood and Coon were obtaining heroin from him for further distribution. Rather, relying on the alleged inconsistency about when Coon made the statement, defendant argues that it was not made "in furtherance of" the conspiracy.

---

[4]The district court explained: "So, I think it is clear that I make the determination of the three grounds for admissibility on applying the standard of preponderance of the evidence and that the jury ultimately will decide the credibility of the co-conspirator's testimony under the reasonable doubt standard and pursuant to their duty to weigh and determine the ultimate credibility of the witnesses and the special rules for considering the testimony of co-conspirators. Particularly, those who may have received the benefit of a plea agreement."

"A statement is made in furtherance of a conspiracy if it was intended to promote conspiratorial objectives; it need not actually further the conspiracy." *United States v. Salgado*, 250 F.3d 438, 449 (6th Cir. 2001). Statements in furtherance of a conspiracy take many forms, including statements that keep a coconspirator apprised of another's activities, induce continued participation, or allay his fears. Id. at 450. Defendant has not shown that it was clear error to find by a preponderance of the evidence that Coon made the statement in the car on the way to meet the defendant, or that what Wood found out later, and probably not from Coon, was that Coon had told the defendant that Wood was planning to rob him. A preponderance of the evidence established that the statement was made in the course and furtherance of the conspiracy. Specifically, there was evidence that, as was their practice, Wood and Coon pooled their money to conduct a single transaction with the defendant. But, short on his portion of the money on this occasion, Coon explained to Wood that he had asked the defendant to accept the handgun in partial payment of their joint purchase. The district court did not err in finding that the statement was "intended to promote conspiratorial objectives." Accordingly, the district court did not abuse its discretion in admitting the statement or denying the motion for mistrial.[5]

## C.     Jury Instruction

Defendant seeks reversal on the grounds that the district court failed to give the multiple conspiracy instruction that he requested. We review the district court's jury instructions for abuse of discretion. *United States v. Prince*, 214 F.3d 740, 761 (6th Cir. 2000). This court may reverse on the grounds of an improper jury instruction "'only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'" *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999) (citation omitted). The "district court's refusal to deliver a requested instruction is reversible only if that instruction is

---

[5]The government also argues that even if Wood learned about the handgun-for-heroin agreement afterwards, it would still have been in furtherance of the conspiracy because it would not be "idle chatter," but would be to keep a coconspirator apprised of the activities of the conspiracy. Finally, the government argues that if error, it would be harmless because Wood's testimony provided circumstantial evidence of the trade, and there was more than sufficient evidence to establish defendant's possession of firearms was not innocent possession unrelated to the drug conspiracy.

'(1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense.'" *United States v. Mack*, 159 F.3d 208, 218 (6th Cir. 1998) (citation omitted). Reversal is not required if the defendant suffers no actual prejudice. *United States v. Caver*, 470 F.3d 220, 246 (6th Cir. 2006).

"[W]hen the evidence is such that the jury could within reason find more than one conspiracy, the trial court should give the jury a multiple conspiracy instruction." *United States v. Warner*, 690 F.2d 545, 551 (6th Cir. 1982). The danger such an instruction seeks to avoid, as in the context of a variance, "is the transference of guilt from defendants involved in one conspiracy to defendants in another conspiracy, such that a defendant is convicted for a conspiracy for which he was not indicted." *Caver*, 470 F.3d at 246. Defense counsel requested a standard multiple conspiracy instruction, which appears to have been included in an initial draft of the district court's proposed instructions. Although no objections were made to the final draft of the instructions, which presumably did not include the requested instruction, defense counsel specifically objected to the district court's failure to give a multiple conspiracy instruction before the jury retired to deliberate. *See* FED. R. CRIM. P. 30(d).

Addressing the objection outside the presence of the jury, the district court explained that the omission was not an oversight, but was based on a determination that it was not appropriate because the evidence did not implicate the defendant in more than one conspiracy. Defense counsel countered that, as the closing arguments indicated, the government was asking the jury to hold defendant responsible for 1,300 grams of heroin seized in the search of the residence controlled by Plunk, even though there was evidence that Plunk had several other major customers who were not associated with the defendant.

After considering the arguments, the district court found that there was not evidence from which the jury could reasonably convict the defendant of a conspiracy for which he was not indicted. However, concerned that the jury might attribute the 1,300

grams of heroin to the defendant in making the quantity determination, the district court gave the following additional charge to the jury:

> In making the quantity determination, you may only consider the quantities of heroin which you find beyond a reasonable doubt were knowingly and intentionally possessed with the intent to distribute and/or were distributed by the defendant and/or by other persons acting with the knowledge and consent of the defendant, during the existence of and in furtherance of the common illegal goals of the conspiracy alleged in Count 1 of the Indictment.
>
> In making the quantity determination, you must not consider evidence of the amount of heroin allegedly seized from the residence of Edmond Plunk at 1623 Waterstone Court.

Given this instruction, the jury was instructed that it could not attribute the heroin seized from Plunk's residence in determining whether the conspiracy to distribute or possess with intent to distribute heroin, for which there was overwhelming evidence, involved more than 1,000 grams of heroin. As such, defendant cannot demonstrate prejudice from the district court's failure to give a multiple conspiracy instruction.[6]

**D.    Admission of Testimony Regarding Wiretapped Calls**

In the final challenge to his convictions, defendant argues that the district court erred in allowing witnesses to "interpret" wiretapped conversations to which they were not a party. The district court's evidentiary rulings are reviewed for abuse of discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997). "Even when the district court has abused its discretion in admitting evidence, we do not reverse a conviction if the error is harmless, meaning that 'it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. Lopez-Medina*, 461 F.3d 724, 741 (6th Cir. 2006) (citation omitted).

---

[6]In a supplemental brief, defendant argues that trial counsel's failure to request, or to object to the failure to include the multiple conspiracy instruction constituted ineffective assistance of counsel. Without addressing the ineffective assistance of counsel claim on the merits, we note that defendant's proposed instructions appear to have included a multiple conspiracy instruction. *United States v. Pruitt*, 156 F.3d 638, 646 (6th Cir. 1998) (stating that this court generally "'will not review an ineffective assistance of counsel claim that is raised for the first time on appeal'") (citation omitted).

Wiretapped calls were published to the jury during the testimony of a number of witnesses, many of whom were participants in the calls. Without much development, defendant challenges testimony from Keith Herdman, Mitchell Wood, Mandell Cantrell, and Agent Bakr concerning calls to which they each were not a party. The government described the testimony as falling into two categories: (1) testimony regarding the identity of the callers; and (2) testimony about what the witness understood certain statements to mean.

With respect to voice identification, the government maintains that in each instance the challenged witness had a proper basis for making a reliable identification of the speaker. *See* FED. R. EVID. 901(b)(5) (voices may be identified "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker"); *United States v. Cooper*, 868 F.2d 1505, 1519 (6th Cir. 1989); *United States v. Simms*, 351 F. App'x 64, 68-69 (6th Cir. 2009). Defendant has not shown otherwise.

Defendant relies on this court's statement in an unpublished decision that the agent's testimony interpreting the meaning of recorded calls was "likely improper" as he "was not a party to the conversation and the conversation, though vague and cryptic, did not include many words or terms with which a juror would have been unfamiliar." *United States v. Blakely*, 375 F. App'x 565, 570 (6th Cir. 2010). However, the court did not hold that only participants may testify concerning the meaning of a recorded telephone call but, rather, rejected the claim because defense counsel had opened the door to questioning about whether drugs were actually mentioned in the calls, no contemporaneous objection to the testimony had been made, and any error in failing to give a curative instruction was harmless.

Defendant's primary argument is that the witnesses could not have testified with personal knowledge about recorded calls to which they were not a party. A witness is required to have personal knowledge of the matters about which he testifies, except in the case of expert opinions, but the threshold for admitting testimony under Rule 602 is low. *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990); *see* FED. R. EVID. 602. Many calls were presented during the testimony of one of the participants and are not

challenged on appeal. For example, Bankston testified about three calls in which she participated, and McReynolds testified concerning seven calls between himself and the defendant.

Among the challenged witnesses, Keith Herdman testified about two calls between himself and defendant and one call between his wife Andrea and defendant. After identifying the voices of his wife and defendant, Herdman was asked what he understood his wife to mean when she asked for "two bundles," and he responded that it referred to twenty individual bags of heroin. The government emphasizes that Herdman provided a foundation showing he had personal knowledge of the matter by testifying that he and his wife obtained heroin from defendant together, that she would place the call to defendant, and that he and his wife would meet defendant later to make the purchase. Defendant has not demonstrated that it was an abuse of discretion to admit this testimony.

Eight recorded calls were published to the jury during Mitchell Wood's testimony, including five calls in which Wood was a participant. Defendant objected to testimony regarding the three calls between Wood's girlfriend Kristine Dixon and defendant. At issue is Wood's testimony that Dixon was referring to bundles of heroin when she is heard saying that she wanted "six," or that she wanted "twenty-two." Wood had already testified how he was familiar with Dixon's purchasing practices. When Wood was asked what defendant meant when he said it was "too hot," defense counsel's objection was sustained. It was not an abuse of discretion to find the challenged testimony—that the numbers Dixon referred to in calls to defendant referred to bundles of heroin—was based on personal knowledge. Further, any error was harmless since Wood explained that he knew the numbers referred to bundles rather than individual bags because they "never bought bags, any of us," would not travel 60 miles to Columbus for individual bags, and always purchased "bundles."

Cantrell was a participant in only one of the eight calls published during his testimony, and testified that the other calls were between Plunk and the defendant. Cantrell testified that he was a "runner" making deliveries for Plunk, including to the

defendant.  Cantrell testified that references to "he" or "him" and checking to see if "he had enough on him" were references to himself and heroin.  He also explained that references to numbers, as in "50" or "the 21" that he had, were understood to refer to grams of heroin.  No objection was made to this testimony.  Nor has defendant attempted to show that Cantrell did not have personal knowledge concerning these matters.

Finally, defendant complains only generally that Agent Bakr identified voices on a number of calls.  The district court required a foundation for Bakr's voice identifications, and sustained defense counsel's objection with respect to several individuals because the foundation was not sufficient.  As with the other witnesses' voice identifications, defendant has not demonstrated either an abuse of discretion or plain error.  When the government began asking Bakr, a DEA agent, about the meaning of terms such as "fronting," "dime," and "stack" in the context of narcotics trafficking, defendant objected and counsel was permitted to conduct *voir dire* outside the presence of the jury.  The district court made further inquiry before allowing the witness to offer her opinion based on her experience as a drug enforcement agent and police officer.

Although the district court did not identify Bakr as an expert witness, in keeping with the defendant's pretrial request that the term be avoided in front of the jury, this is the sort of specialized knowledge that courts have permitted law enforcement officers to testify about as long as the testimony is relevant and reliable.  *See United States v. Johnson*, 488 F.3d 690, 697-98 (6th Cir. 2007); *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004).  Defendant has failed to demonstrate that the district court abused its discretion by permitting Agent Bakr to offer opinion testimony based on her specialized knowledge and experience.  *See Lopez-Medina*, 461 F.3d at 743.

## III.

### A.     Consecutive Sentences under § 924(c)

Attacking the consecutive sentences imposed for his § 924(c) convictions, defendant argues that § 924(c)'s "except clause" proscribed the imposition of the mandatory minimum consecutive sentences of 60 months and 300 months since he also

received a mandatory minimum life sentence for the conspiracy conviction under 21 U.S.C. § 841(b)(1)(A).[7] Acknowledging that this argument was not raised at sentencing, defendant argued for application of this court's subsequent holding to that effect in *Almany*, but, as the government points out, *Almany* has since been vacated in light of the Supreme Court's contrary interpretation in *Abbott v. United States*, 131 S. Ct. 18 (2010). *See United States v. Almany*, 598 F.3d 238, 241-42 (6th Cir.), *vacated* 131 S. Ct. 637 (2010). Following *Abbott*, this court has explained that the "except" language in § 924(c) "refers only to other provisions imposing longer mandatory sentences 'for the conduct § 924(c) proscribes, *i.e.*, possessing a firearm in connection with a predicate crime.'" *United States v. Ham*, 628 F.3d 801, 812 (6th Cir. 2011) (citation omitted). As a result, the defendant's mandatory minimum sentences under § 924(c) must run consecutively with any mandatory sentence for predicate crimes such as the convictions for possession with intent to distribute heroin. *United States v. Clark*, 634 F.3d 874, 877 (6th Cir. 2011).

**B.     Enhanced Sentence under § 841(b)(1)(A)**

The penalty provisions applicable to defendant's conviction for conspiracy to distribute or possess with intent to distribute 1,000 grams or more of heroin provide that, if committed "after two or more prior convictions for a felony drug offense have become final," the defendant "shall be sentenced to a mandatory term of life imprisonment without release[.]" 21 U.S.C. § 841(b)(1)(A). In order to impose this statutory sentencing enhancement, the government must provide the required notice by filing an information pursuant to 21 U.S.C. § 851(a). *United States v. Mans*, 999 F.2d 966, 969 (6th Cir. 1993). The sufficiency of the filing of an information pursuant to § 851(a) is a question of law, which this court reviews *de novo*. *United States v. Pritchett*, 496 F.3d

---

[7] Section 924(c)(1)(A) provides that: "Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law," a person who possesses a firearm during and in relation to a crime of violence or drug trafficking crime, or uses or carries a firearm in furtherance of such crime, shall, "in addition to the punishment provided for such crime of violence or drug trafficking crime" be sentenced to not less than five years, and in the case of a second or subsequent conviction, not less than 25 years. The except clause does not preclude the consecutive § 924(c) sentences in this case because they arise from separate substantive predicate drug offenses. *See United States v. Graham*, 275 F.3d 490, 519-20 (6th Cir. 2001).

537, 541 (6th Cir. 2007).  Since neither claim was raised in the district court, however, our review is for plain error.  *United States v. Gonzalez*, 512 F.3d 285, 288 (6th Cir. 2008).

The information filed prior to trial in this case identified six prior convictions, including three prior felony drug convictions.  Defendant's response to that information did not contest the existence or accuracy of those prior convictions, but successfully argued that the convictions could not support the enhanced penalties under § 924(e).  At sentencing, the government made a proffer of evidence establishing that defendant had three prior felony drug convictions required by § 841(b)(1)(A).  Defendant then signed a written stipulation acknowledging the following three prior felony drug convictions in the Court of Common Pleas of Franklin County, Ohio:  (1) Aggravated Trafficking, No. 82CR-07-2236, on or about May 19, 1983; (2) Preparation of Heroin for Sale and Possession of Cocaine, No. 00CR-0517, on or about August 13, 2001; and (3) Possession of Heroin and Having Weapons under Disability, No. 99R-2699, on or about August 13, 2001.  Addressed directly by the district court, defendant himself agreed that the facts in the stipulation were true.  After finding that defendant had two or more prior felony drug convictions, the district court imposed a mandatory minimum sentence of life imprisonment for the conspiracy offense.

First, defendant argues that the Information, as well as the stipulation at sentencing, inaccurately identified the date of conviction for Aggravated Trafficking as May 14, 1983, when that was the date of his guilty plea and the judgment was not entered until July 18, 1983.  The information otherwise correctly identified the court, the case number, and the conviction.  In examining the adequacy of the notice under § 851, "the proper inquiry is whether the government's information provided the defendant 'reasonable notice of [its] intent to rely on a particular conviction and a meaningful opportunity to be heard.'"  *United States v. King*, 127 F.3d 483, 488-89 (6th Cir. 1997) (citation omitted).  Defendant has not shown that the misidentification of the date of conviction deprived the defendant of reasonable notice or a meaningful opportunity to be heard.  *Id*. at 489 (holding defendant had adequate notice when information listed

offense and court despite error in date). Defendant cannot demonstrate plain error with respect to the § 851 notice of this conviction.

Second, defendant argues that it was improper for the other two felony drug convictions to be counted separately because he was arrested for these offenses on the same day and was sentenced for those convictions on the same day. *See United States v. Murphy*, 107 F.3d 1199, 1208-10 (6th Cir. 1997). Not only is this claim without merit, but any error would be harmless because the mandatory life sentence is triggered by two or more felony drug convictions.

This court has adopted a "separate criminal episodes" test for determining whether prior felony drug convictions are separate predicate convictions for purposes of enhancement under § 841(b)(1)(A). This test asks whether the convictions arise from "separate criminal episodes" that are "distinct in time." "An episode is an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration." *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir. 1991).

Although the records indicate that the sentences imposed in Case Nos. 00CR-0517 and 99R-2699 on August 13, 2001, were to run concurrently with each other, the separate indictments reflect that the drug convictions arose from separate criminal episodes. In Case No. 99R-2699, defendant was indicted in May 1999 on charges arising from the possession of heroin and cocaine on January 7, 1999, while in Case No. 00CR-0517, defendant was indicted in February 2000 on charges arising from the possession of heroin and cocaine on October 16, 1999. Defendant has not shown error, much less plain error, in counting the convictions in these two cases separately where the records reflect that the convictions arose from separate criminal episodes that are distinct in time. *See*, *e.g.*, *United States v. Goins*, 53 F. App'x 724, 729-30 (6th Cir. 2002) (holding that two felony convictions for drug sales that took place six weeks apart to the same government informant arose from separate episodes even though he was convicted on both counts on the same day); *United States v. Jones*, 205 F. App'x 327,

335-36 (6th Cir. 2006) (per curiam) (holding separate convictions for drug transactions occurring four or five days apart were properly counted as separate convictions).

## C.     Constitutionality of Life Sentence

Finally, challenging the constitutionality of the mandatory life sentence, defendant argues (1) that the enhancement of his sentence based upon his prior convictions violated the Double Jeopardy Clause of the Fifth Amendment; and (2) that the mandatory life sentence is so disproportionate as to constitute cruel and unusual punishment in violation of the Eighth Amendment.   Constitutional challenges to a sentence present questions of law that are reviewed *de novo*.  *See United States v. Jones*, 569 F.3d 569, 573 (6th Cir. 2009).  While the government argues that only the Eighth Amendment claim was raised in the district court, both claims fail even under a *de novo* review.

The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal; against a second prosecution for the same offense after conviction; and against multiple punishments for the same offense."  *United States v. Mack*, 938 F.2d 678, 679 (6th Cir. 1991).  This court has squarely rejected defendant's contention that the enhancement of a sentence under § 841(b) on the basis of prior felony drug convictions violates double jeopardy.  *See Pruitt*, 156 F.3d at 645-46; *United States v. Flowal*, 163 F.3d 956, 963 (6th Cir. 1998); *United States v. Gonzalez*, 257 F. App'x 932, 945-46 (6th Cir. 2007).

This court adheres to the "narrow proportionality principle" for evaluating Eighth Amendment claims articulated in *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring).  *See United States v. Graham*, 622 F.3d 445, 452 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 2962 (2011); *United States v. Hill*, 30 F.3d 48, 50-51 (6th Cir. 1994).  A plurality in *Harmelin* rejected the claim that the Eighth Amendment required strict proportionality and concluded that it prohibited only "extreme sentences that are 'grossly disproportionate' to the crime."  501 U.S. at 1001.  Applying this principle, the plurality in *Harmelin* rejected the defendant's assertion that his sentence of life imprisonment without parole was grossly disproportionate to the crime since he

was a first-time felony offender in possession of 650 grams of cocaine. *Id.* Likewise, this court has held that imposition of a life sentence without parole for a third felony drug conviction is not "grossly disproportionate" to the crime. *See Hill*, 30 F.3d at 50-51; *see also Jones*, 569 F.3d at 573-74; *United States v. Wimbley*, 553 F.3d 455, 463 (6th Cir. 2009); *Caver*, 470 F.3d at 247. Defendant's assertion of this claim fairs no better. To the extent that defendant asserts a lack of proportionality between himself and others convicted of similar offenses, this court held that comparative proportionality is not mandated by the Constitution. *See United States v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003).

## IV.

For the reasons stated, defendant's convictions and sentences are **AFFIRMED**.