**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0057n.06

Case Nos. 18-5331/5541

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Feb 04, 2019<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| MAURICE SYDNOR (18-5331); TIMOTHY | ) | KENTUCKY |
| HARRIS (18-5541), | ) |  |
|  | ) |  |
| Defendants-Appellants. | ) |  |
|  | ) |  |

BEFORE: BATCHELDER, SUTTON, and DONALD, Circuit Judges.

SUTTON, Circuit Judge. Maurice Sydnor and Timothy Harris pleaded guilty to conspiring to traffic methamphetamine and heroin in Kentucky. Each one appeals on different grounds. Sydnor appeals his enhanced penalty and a fine. Harris appeals the district court's rejection of his attempt to withdraw his guilty plea as well as his sentence. We affirm as to both men.

For about eight months in 2015 and 2016, Harris ran a drug-trafficking ring centered in southern Kentucky. He employed several drug addicts, paying them with heroin to travel to Louisville and pick up drugs for distribution back home. One of the Louisville suppliers was Harris's cousin, Sydnor.

The ring came to an end in June 2016, when Kentucky police caught Harris obtaining over a kilo of methamphetamine from Sydnor. A grand jury indicted Harris, Sydnor, and the rest of the ring for conspiracy to distribute methamphetamine and heroin. Sydnor and Harris pleaded guilty.

A few issues arose at sentencing. Sydnor objected to the way the government notified him that he would face an enhanced penalty. The district court overruled his objection and sentenced Sydnor to 240 months and a $15,000 fine. Meanwhile, Harris tried to withdraw his plea. But the district court denied his motion and sentenced him to 480 months.

*Sydnor's appeal.* Sydnor challenges three aspects of his sentence.

1. He contests the sufficiency of the government's pre-plea notice that he would face an enhanced penalty. Sydnor's conviction carries a minimum penalty of 10 years in prison, but a prior felony drug conviction can double that. *See* 21 U.S.C. § 841(b)(1)(A)(viii). To seek the higher penalty, the government must, "before entry of a plea of guilty," file an "information" telling the defendant the prior conviction it plans to use. *Id.* § 851(a)(1).

The government complied with this requirement. The same day that Sydnor requested a rearraignment to plead guilty, the government filed an information explaining that Sydnor had a previous drug conviction that would trigger the enhanced penalty. The information included the prior offense, court of conviction, docket number, and date of sentencing. Sydnor signed the plea agreement the same day. At the change-of-plea hearing four days later, the court explained that Sydnor's prior conviction would lead to an enhanced penalty. Sydnor confirmed that he understood, and the court entered the plea. Because the government filed its information in advance of the plea's entry, any risk of a § 851 violation disappeared.

Sydnor challenges that conclusion on two grounds. He first says the government filed the information "surreptitiously" after he had already signed the plea agreement. Sydnor's Br. 12.

2

Looking past the fact that the plea agreement itself explained the enhanced penalty, it is clear that this timing allegation doesn't matter. What matters is that the government filed the document before Sydnor pleaded guilty at the rearraignment. That's all the statute requires. *United States v. King*, 127 F.3d 483, 489 (6th Cir. 1997).

He next maintains that the information did not supply sufficient notice because it included the date of sentencing for the previous conviction rather than the date the sentencing order was filed (the following day). That, too, is beside the point. We have upheld more significant discrepancies for the same reason we uphold this one: The government identified the conviction upon which it would rely. *United States v. Kelsor*, 665 F.3d 684, 700 (6th Cir. 2011).

2. Sydnor argues that this mandatory-minimum sentence violates 18 U.S.C. § 3553(a)(2), as well as the U.S. Constitution's Due Process and Equal Protection Clauses. To his credit, he acknowledges that our cases reject these arguments. *See United States v. Wettstain*, 618 F.3d 577, 591–92 (6th Cir. 2010); *United States v. Wimbley*, 553 F.3d 455, 462–63 (6th Cir. 2009); *United States v. Pruitt*, 156 F.3d 638, 645 (6th Cir. 1998). He offers no cognizable ground for sidestepping these precedents.

3. Sydnor contests the district court's imposition of a $15,000 fine, a decision we review for abuse of discretion. *United States v. Blackwell*, 459 F.3d 739, 770–71 (6th Cir. 2006). At sentencing, the court must impose a fine in all cases where the defendant has not shown "that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a); *see United States v. Ukomadu*, 236 F.3d 333, 340 (6th Cir. 2001).

The district court considered the § 5E1.2(d) factors in determining whether Sydnor could pay this fine. It found that he could not pay the fine at the low end of his guidelines range ($30,000) but that he could pay a $15,000 fine. The court noted that the fine would not impose a hardship

3

on Sydnor's family. Under the court's order, Sydnor could pay in installments with prisoner wages while incarcerated and could pay in adjusted installments after his release. The court did not clearly err in deciding that Sydnor could pay this fine over 20 years.

Sydnor counters that the court should have made more detailed findings about his ability to pay, pointing to the presentence report's conclusion that he is currently unable to pay any fine. But we have never required detailed findings, only an indication that the court considered ability to pay and the other factors listed in the guideline. *United States v. Lumbard*, 706 F.3d 716, 727 (6th Cir. 2013). While the court was free to disagree with the presentence report's assessment of current inability to pay, *United States v. Hopper*, 941 F.2d 419, 423 (6th Cir. 1991), the court had no need to do so because the report did not assess *future* inability to pay. That was part of Sydnor's burden if he wished to avoid a fine. *See United States v. Tosca*, 18 F.3d 1352, 1354–55 (6th Cir. 1994). But he failed to offer then, and he fails to offer now, an explanation why he could not pay the fine slowly through prisoner pay and, after that, in installments. *See id.*

*Harris's appeal.* Harris appeals on two grounds.

1. He challenges the court's denial of his motion to withdraw his guilty plea. A defendant may withdraw a guilty plea before sentencing if he shows "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). A district court considers a nonexclusive set of factors to decide if a defendant has met the standard. *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008). We review the district court's sifting of those factors for abuse of discretion, *id.*, bearing in mind that "the occasion for setting aside a guilty plea should seldom arise" where a defendant entered the plea knowingly and voluntarily at a hearing in which he admitted to the crime, *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (quotation omitted).

This case does not present one of those occasions. The government had a strong case against Harris, whom police caught in the act of picking up over a kilo of methamphetamine. Four days before his trial's start date, after most of his codefendants had pleaded guilty, Harris requested a change-of-plea hearing. During an extensive plea colloquy in December 2017, Harris confirmed that he understood the charges, plea agreement, and potential penalties; that he was satisfied with counsel; and that he was voluntarily giving up his trial rights. He admitted to the crime, testifying, "I agreed with other people to sell methamphetamine and heroin in the Pulaski County area." R. 402 at 26. He does not now assert innocence. There is nothing suspect about this plea.

On top of that, Harris waited until March 2018, shortly before sentencing, to signal his discontent about the plea. The unexplained delay counsels against allowing him to withdraw it, *see United States v. Benton*, 639 F.3d 723, 727 (6th Cir. 2011), as do his decades of experience with the criminal justice system, *see United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996) (per curiam). The court did not abuse its discretion.

Harris's only meaningful response is that the court did not give sufficient weight to the "circumstances of the plea" factor. According to Harris, he would not have pleaded guilty if his attorney had not pressured him into doing so and neglected to discuss possible defenses or the government's evidence. Harris maintains that these circumstances outweigh any other factor. But we have repeatedly said that no one factor controls the plea-withdrawal analysis. *See Haygood*, 549 F.3d at 1052. And the district court did not err in taking a different view of these circumstances. At the change-of-plea hearing, Harris affirmed that he was satisfied with counsel's advice and representation, that he was pleading guilty voluntarily, that he was in fact guilty of the charge, and that the government would be able to prove at trial his guilt beyond a reasonable doubt. With this backdrop, and after holding a plea-withdrawal hearing with new defense counsel, the

court found Harris's post hoc complaints about counsel unsupported—and likely born of "sticker shock" at seeing the presentence report.  R. 442 at 10.  The idea behind Rule 11 is to provide a rare remedy for "real confusion or misunderstanding" about the plea agreement, not for buyer's remorse.  *Ellis*, 470 F.3d at 281.

2.    Harris contests his enhancement for maintaining a stash house.  *See* U.S.S.G. § 2D1.1(b)(12).  But in his plea agreement he waived his right to appeal "any determination made by the [c]ourt at sentencing with the sole exception that [he] may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range."  R. 306 at 3–4.  We enforce knowing and voluntary appellate waivers.  *See United States v. Calderon*, 388 F.3d 197, 200 (6th Cir. 2004).  Harris may not appeal this enhancement, because his sentence did not exceed his guidelines range.

Harris protests that he did not understand the appellate waiver at the time that he pleaded guilty.  But the court thoroughly explained it at the change-of-plea hearing.  Harris confirmed that he understood and was proceeding voluntarily.  On this record, we must enforce the waiver.

We affirm.