NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0605n.06

No. 19-3170

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Oct 26, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| v. | ) ) | UNITED STATES DISTRICT COURT FOR THE |
| PHILLIP BLOUGH, | ) ) | NORTHERN DISTRICT OF OHIO |
| Defendant-Appellant. | ) ) | |

BEFORE:     COLE, Chief Judge; BATCHELDER and STRANCH, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge.  A jury convicted Phillip Blough on several counts related to possessing and distributing cocaine as well as possession of a firearm in furtherance of a drug-trafficking crime.  The only count on appeal is Blough's firearm conviction.  Blough challenges the district court's jury instruction and whether there was sufficient evidence for the firearm conviction.  For the following reasons, we AFFIRM the judgment of the district court.

**I.**

With support from the Federal Bureau of Investigation ("FBI"), the MEDWAY Drug Enforcement Agency, a local drug task force in Wayne County, Ohio, first discovered Blough's drug involvement in the fall of 2017 as part of a larger drug-trafficking investigation that ultimately led to an 80-count federal indictment against thirteen people, including Blough.  Law enforcement searched Blough's residence on November 8, 2017, discovering cocaine, drug-trafficking

paraphernalia, and numerous loaded firearms. Specifically, they discovered a loaded .38 caliber Charter Arms revolver underneath Blough's mattress, a loaded .40 caliber CZ pistol in Blough's bedroom closet, a loaded 12-gauge Benelli shotgun propped against a wall outside Blough's bedroom, and a loaded nine-millimeter Smith and Wesson M&P (Military and Police) pistol in a dresser drawer. In the drawer above the drawer containing the nine-millimeter pistol, law enforcement found two bags of cocaine, collectively weighing 20.27 grams. They also discovered in the upper corner of Blough's bedroom a video-surveillance camera. Blough's father testified that Blough used the firearms to shoot groundhogs, which were a nuisance on his family's rural property. But Officer Brian Banbury, a wildlife law-enforcement investigator with the Ohio Department of Natural Resources, testified that Blough's handguns were designed for close-quarter combat, not for hunting, and that in his two decades' worth of experience, he had "never found anyone hunting with any of these three [types of handguns] in the field."

Law enforcement arrested Blough and a federal grand jury indicted him on one count of conspiracy to possess with the intent to distribute and to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b), 846; three counts of using a telephone to facilitate the commission of a felony controlled-substance offense, in violation of 21 U.S.C. § 843(b); one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and one count of possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

For the firearm count, the district court instructed the jury that the term "in furtherance of" means that "the firearm was possessed to advance or promote the crime(s) charged." In accordance with Sixth Circuit Pattern Jury Instruction 12.03(2)(D), the district court continued: "you may consider these factors: (1) whether the firearm was strategically located so that it was quickly and

2

easily available for use; (2) whether the firearm was loaded; (3) the type of weapon; (4) whether possession of the firearm was legal; (5) the type of drug trafficking crime; and (6) the time and circumstances under which the firearm was found." Then, though not expressly provided for by Sixth Circuit Pattern Jury Instruction 12.03(2)(D), the district court added that the jury "may also consider whether the defendant possessed a firearm for protection against robbery in the context of an ongoing narcotics distribution operation." That final instruction was the only one on which the government and Blough disagreed; Blough objected before the instruction was read to the jury. He argues again on appeal that the jury instruction was erroneous.

The jury returned a guilty verdict on all six counts. The district court sentenced Blough to 76 months in prison. Blough now appeals only his firearm conviction. Specifically, Blough challenges (1) whether there was sufficient evidence for his conviction on the firearm offense and (2) whether the district court erred by instructing the jury that it could consider whether Blough possessed the firearm "for protection against robbery in the context of an ongoing narcotics distribution operation."

**II.**

"We review a challenge to the sufficiency of the evidence supporting a criminal conviction *de novo*." *United States v. Robinson*, 813 F.3d 251, 255 (6th Cir. 2016). "The relevant inquiry is whether, 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Consequently, "a sufficiency of the evidence challenge places a 'very heavy burden' on the defendants-appellants." *Robinson*, 813 F.3d at 255 (citation omitted). "[W]e do not reweigh

the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

In order to convict Blough of possession of a firearm in furtherance of a drug-trafficking crime, the government needed to prove beyond a reasonable doubt that (1) Blough committed the crimes charged (*i.e.*, conspiracy to possess with intent to distribute and/or possession with the intent to distribute), (2) Blough knowingly possessed a firearm, and (3) the possession of the firearm was in furtherance of the crimes charged. The parties dispute only the final element, *i.e.*, whether the firearms Blough possessed in his bedroom were "in furtherance of" his drug-trafficking crimes.

"In the context of § 924(c), the term 'in furtherance of' means that 'the weapon must promote or facilitate the crime.'" *United States v. Kelsor*, 665 F.3d 684, 692 (6th Cir. 2011) (quoting *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001)). So, "whether a defendant possesses a firearm 'in furtherance of' a crime depends on the defendant's intent in possessing the gun." *United States v. Maya*, 966 F.3d 493, 500 (6th Cir. 2020). "If, for example, a drug dealer owns a gun to protect the drugs, the proceeds of drug sales, or the dealer himself, that possession-for-protection purpose will facilitate the crime." *Id.* (quotation marks and citation omitted). But "possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction." *Mackey*, 265 F.3d at 462.

At trial, the government presented evidence that Blough used the loaded firearms for protection from robbery in the context of his drug trafficking. First, the firearms were found in close proximity to the drugs and easily accessible; Blough's nine-millimeter pistol was stored in the same dresser that contained Blough's bags of cocaine. Second, the government introduced into evidence that Blough commented, during the search of his residence, that he feared being

4

robbed and that the people he was dealing with were dangerous. Third, the government presented testimony from Officer Brian Banbury, a wildlife law-enforcement investigator, to rebut Blough's father's claim that the firearms were used to combat a groundhog nuisance. Banbury explained that Blough's firearms, specifically the two pistols and one revolver that were seized, were not the type of firearms typically used for hunting, but instead were designed for close-quarter combat. Similarly, the government disputed that the video-surveillance camera installed in Blough's bedroom was primarily intended to keep an eye on his dog. The government introduced police testimony that "[n]ormally the drugs are hidden in a home," and such "surveillance systems are very common with people that sell drugs" in order "to watch over [the drugs]." In light of this evidence, the jury found that the government proved beyond a reasonable doubt that the firearms were used "in furtherance of" Blough's drug-trafficking crimes.

Blough concedes that he was involved in drug trafficking, but he claims that the firearms in his possession were unrelated to his criminal activity. Blough notes that he was legally permitted to own the firearms and that he used them for legal purposes, such as target practice and hunting. According to Blough, he stored the firearms in his bedroom because his father did not allow him to store them anywhere else. And he emphasizes that the government never presented evidence of his possessing a firearm (1) when meeting his drug dealer, (2) on his person at any point during the government's surveillance, (3) or in his vehicle. So, Blough concludes, the government's only remaining possibility to tie his drug activity to the firearms is to claim that they were used for protection. But Blough argues that the government has failed to show a "connection" or "nexus" between his firearms and his drug activity, so the government's protection argument is just "speculation."

While it is true that evidence of Blough's using a firearm in a drug transaction or having it on his person at the time of the transactions may have been sufficient for the government to convict Blough, that type of evidence is not necessary for a § 924(c) conviction. A defendant can be convicted under § 924(c) even if he did not use the firearm directly in the drug transaction. For example, where, as here, the defendant possesses the type of firearms often used by drug dealers and keeps those firearms easily accessible,[1] a reasonable juror could find that the firearms promoted or facilitated the defendant's drug-trafficking activity by offering the defendant enough protection (or the semblance of protection) to enter into and continue the often-dangerous, criminal activity. *See, e.g., Maya*, 966 F.3d at 500 ("If, for example, a drug dealer owns a gun to protect the drugs, the proceeds of drug sales, or the dealer himself, that possession-for-protection purpose will facilitate the crime." (internal quotation marks and citation omitted)); *Kelsor*, 665 F.3d at 692-93 (noting a reasonable juror could find a connection between the firearms and underlying drug offenses because the firearms were in the defendant's bedroom with the drugs, "were strategically located so as to be quickly and easily available for use, and were constructively possessed for protection against robbery in the context of an ongoing heroin distribution operation"); *United States v. Swafford*, 385 F.3d 1026, 1029 (6th Cir. 2004) (affirming a § 924(c) conviction because the type of firearm was "commonly associated with drug trafficking crimes" and was "strategically located" near the defendant's bed, so a rational jury could find that the firearm was used for protection "in furtherance of the drug trafficking" (citations omitted)); *United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004) ("[A] jury can reasonably infer that firearms which are

---

[1] The government argues that the firearms' close proximity to the drugs is what matters, but we have noted that a "gun seems much more useful for protection purposes if kept close to [] the potential user, rather than close to the drugs." *United States v. Swafford*, 385 F.3d 1026, 1029 (6th Cir. 2004). In this case, Blough had firearms close to both him (*i.e.*, under his mattress) and his drugs (*i.e.*, in the same dresser as the cocaine). While the proximity of the gun to the drugs may be important depending on the circumstances, the most important question, as it relates to whether the gun is used for protection, is whether the gun is accessible.

strategically located so as 'to provide defense or deterrence in furtherance of the drug trafficking'

are used in furtherance of a drug trafficking crime." (citation omitted)). Put differently, the

protection from robbery the firearms provided may also have facilitated Blough's drug trafficking,

or his engaging in it to a greater extent than he otherwise would have.

And the evidence the government introduced at Blough's trial to prove this firearm-drug

activity "nexus" mirrors the type of evidence the government introduced in cases we upheld. In

particular, we have held that the type of firearm (e.g., whether it is for close-quarter combat or "is

the type of weapon often used in drug trafficking") and where that type of firearm is located (*i.e.*,

whether it is strategically located in close proximity to the drugs and/or easily accessible) is the

type of evidence that can be used to show that the defendant's firearm was used to protect against

robbery. *See, e.g.*, *Maya*, 966 F.3d at 502 ("[P]olice found [the defendant's] loaded handgun in an

easily accessible gap between the mattresses of his bed close to the drug proceeds."); *Kelsor*, 665

F.3d at 692-93 (one firearm located in the bed and another in a closet where the drugs and drug

paraphernalia were stored); *Swafford*, 385 F.3d at 1027, 1029 (firearm located in the bedroom and

easily accessible); *Couch*, 367 F.3d at 559, 561 (firearm located near the drugs and where the

defendant's "drug transactions were known to occur"); *see also United States v. Jernigan*, 59 F.

App'x 647, 652 (6th Cir. 2003) (finding that "a 9mm handgun," such as the 9mm Smith and

Wesson M&P pistol Blough possessed, "is the type of weapon often used in drug trafficking").

These cases establish clearly that this type of evidence is sufficient to support a § 924(c) conviction

and to survive a sufficiency-of-the-evidence challenge on appeal. *See also Maya,* 966 F.3d at 500-

01 (noting that because "[i]n most cases, a defendant will not confess to possessing the firearm to

facilitate a drug crime," "the government typically must resort to circumstantial evidence to

establish this illicit purpose," including evidence such as "the type of weapon" possessed and whether it was "strategically located").

In sum, Blough's own words, the installment of a video-surveillance camera in his bedroom, the type of firearms he possessed, and the firearms' easy accessibility and proximity to the drugs and drug paraphernalia collectively suggest that Blough was in fact possessing the firearms for protection against robbery during his drug-trafficking activities. We cannot say that no rational trier of fact could have found beyond a reasonable doubt that Blough's possession of the firearms was "in furtherance of" his drug-trafficking crimes.

### III.

"We review challenges to jury instructions under the abuse-of-discretion standard." *United States v. Williams*, 612 F.3d 500, 506 (6th Cir. 2010). "When jury instructions are claimed to be erroneous, we review the instructions as a whole, in order to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005) (citation omitted).

Blough timely objected to the court's instruction that "[y]ou [the jury] may also consider whether the defendant possessed a firearm for protection against robbery in the context of an ongoing narcotics distribution operation." The district court overruled Blough's objection at the time because the instruction "comes from . . . Sixth Circuit case law."

On appeal, Blough argues that the district court's instruction to the jury that it could consider whether Blough possessed the firearms for protection against robbery "was confusing and prejudicial to him" and "put impermissible weight on that factor to [his] detriment."[2]

---

[2] Blough also argues that his case could be distinguished from cases where we considered whether the firearm was possessed to prevent a robbery, but those arguments are better support for his sufficiency-of-the-evidence claim.

However, a plain reading of that jury instruction shows that nothing in it puts more weight on that factor than on the other six factors. Nor does Blough cite any case to support the proposition that all of the factors enumerated in a jury instruction must be given equal weight. And based on the precedent we relied on to reject Blough's sufficiency-of-the-evidence claim, we agree with the district court that our precedent establishes clearly that the jury, when deciding whether to convict a defendant for possession of a firearm in furtherance of a drug-trafficking crime, may consider whether the defendant possessed the firearm(s) for protection against robbery. *See*, *e.g.*, *Maya*, 966 F.3d at 500 ("If, for example, a drug dealer owns a gun 'to protect the drugs, the proceeds of drug sales, or the dealer himself,' that possession-for-protection purpose will facilitate the crime." (citation omitted)); *Kelsor*, 665 F.3d at 693 (noting that because the firearms "were constructively possessed for protection against robbery in the context of an ongoing heroin distribution operation," "a reasonable juror could conclude that there was a connection between defendant's constructive possession of the firearms seized . . . and the underlying drug offenses"); *Couch*, 367 F.3d at 561 ("[A] jury can reasonably infer that firearms which are strategically located so as 'to provide defense or deterrence in furtherance of the drug trafficking' are used in furtherance of a drug trafficking crime." (quoting *Mackey*, 265 F.3d at 462-63)). Finally, Pattern Jury Instruction 12.03(2)(D) states that the list of six factors "is not exhaustive." Accordingly, we hold that the district court did not abuse its discretion by instructing the jury that it may consider whether Blough used the firearms to protect against robbery in the context of a narcotics operation.

**IV.**

For the foregoing reasons, we AFFIRM.