NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0175n.06

Case No. 13-5417

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Mar 05, 2014*
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| MELVIN BEASLEY, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: BATCHELDER, Chief Judge; SILER and CLAY, Circuit Judges.

**SILER**, Circuit Judge. Defendant Melvin Beasley appeals his conviction and sentence for possession of cocaine and crack cocaine with intent to distribute. Beasley challenges the district court's decisions denying his motion to suppress, permitting a government expert witness to testify as to why drug dealers use latex gloves, ordering drug and alcohol testing and treatment as a special condition of supervised release, and increasing his mandatory minimum sentence without submitting his prior felony convictions to the jury. We **AFFIRM**.

**BACKGROUND**

Police officers utilized confidential informant Eurnell Hoyle to purchase crack cocaine from Beasley three times in April 2010. Each time, Hoyle was equipped with an audio/video recording device. Additionally, because the recording device did not have a live feed, Officer

Garrison Taylor instructed Hoyle to leave his cell phone on so the officers could monitor the transaction for Hoyle's safety. On each occasion, Hoyle went to Beasley's residence, where Beasley sold the crack cocaine to him. During the transaction, Beasley wore gloves, cut the crack cocaine with a razor, weighed it on a digital scale, put it into an ashtray, and poured it into bags. After each purchase, Hoyle returned to the officers and gave Officer Taylor the crack cocaine and audio/video recording. Officer Taylor weighed and field tested the substance. He also reviewed the recordings of the controlled purchases, and discovered that the April 19 recording failed.

On April 20, 2010, Officer Taylor drafted a search warrant affidavit for Beasley's residence and described his basis for probable cause as follows:

> Affiant has received information from police officers and a confidential source concerning possible illegal drug activity at [Beasley's residence], due to strange activity and a large number of traffic to and from said residence.
> Acting on the information Affiant began an investigation into [Beasley's residence] . . . . A further check of [] Beasley revieled [sic] that [] Beasley is currently on federal probation for distribution of crack and has an extensive federal criminal history. . . .
> Within the past 72 hours Affiant used a confidential and reliable source to purchase Crack Cocaine from said residence. Affiant met said cs at a location. . . . Said cs was then equipped with an audio listening device and controlled US currency. Said cs then made contact with [] Beasley, via cell phone, and the two arranged to meet at [Beasley's residence] to conduct a transaction. Said cs then went to [Beasley's residence] and made contact with a male black [] Beasley. Said cs then conducted a transaction in which the controlled US currency was exchanged for Crack Cocaine. Said cs then left and met with Affiant at a predetermined location a short distance from said residence. Said cs then turned over the substance which was positive for Crack Cocaine and weighed approximately 9 grams. [Said cs] was monitored during said controlled buy.[1]

The affidavit referred to the April 19 transaction, the only purchase where the recording failed.

---

[1] Although the affidavit says that "Affiant was monitored during said controlled buy," the parties agree that the last sentence of the excerpt should say that Officer Taylor monitored Hoyle during the controlled purchase. Therefore, the last sentence of the excerpt has been edited to reflect Officer Taylor's intended language.

The search warrant was signed by a state judge and was executed on April 23, 2010. The officers recovered approximately 70 grams of crack cocaine and 5.8 grams of cocaine from Beasley's truck and house. They also found digital scales, torn baggies, rubber gloves, and an ashtray with white residue in Beasley's shed.

Beasley was indicted for possession with intent to distribute crack cocaine on April 8 (count 1), April 13 (count 2), April 19 (count 3), and April 23 (count 4), as well as possession with intent to distribute cocaine on April 23 (count 5).

Beasley moved to suppress all items seized and evidence obtained as a result of the search of his residence, and a United States magistrate judge held a hearing on the motion. Beasley argued that there was an issue as to whether the drugs seized were actually cocaine, which the magistrate judge said would require a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The court determined that the parties could continue with the suppression hearing and Beasley could subsequently file a *Franks* motion; however, Beasley never did so.

The magistrate judge recommended that the motion be denied, finding that the affidavit "sets forth facts and circumstances to provide a sufficient basis for the state court judge to find, based upon the totality of the circumstances, that there was probable cause for the search." The district court adopted the magistrate judge's findings and denied Beasley's motion to suppress.

At Beasley's trial, Hoyle and Officer Taylor testified as to the facts surrounding the three controlled purchases. Officer Taylor also testified about the items the officers recovered from Beasley's house, truck, and shed during the search warrant's execution. The jury submitted a question to Officer Taylor, asking whether the officers monitored Hoyle via Hoyle's cell phone during the April 19 controlled purchase, and Officer Taylor responded, "As far as I'm aware."

The government also offered the opinion testimony of Drug Enforcement Agency Task Force Officer Joseph Hoing as to what items and materials he would expect someone engaged in the distribution of crack cocaine to use, and he named plastic bags, scales, and razors or knives as instruments for cutting, weighing, and packaging crack cocaine. He also identified pictures of crack cocaine found at Beasley's residence and testified that the amounts were consistent with distribution, not personal use.

The government then asked Officer Hoing about the use of gloves in drug activities, and he testified that he had recovered gloves in homes where cocaine or crack cocaine was being distributed and that he believed drug dealers use gloves to keep the drugs off them and to avoid leaving fingerprints on packaging materials. The government then asked why a drug dealer would not want to get crack cocaine or cocaine on his skin, and he replied that the drugs can be absorbed into the skin, which he believed could physically affect the drug dealer. He based his belief on his training where he was told to wear gloves when gathering evidence so he would not be exposed to the drugs. Finally, the government asked Officer Hoing whether it is possible to test positive on a drug test for handling cocaine or crack cocaine without gloves, and he responded that he believed it was very possible. The district court later advised the jury that they were not required to accept Officer Hoing's opinion.

Beasley also testified, denying that he sold Hoyle crack cocaine during the three controlled purchases and claiming that he actually sold Hoyle an herbal root known as John the Conqueror. He testified that Hoyle conspired against him and had crack cocaine with him when he visited Beasley and that Hoyle gave him the scale and bags. When questioned about wearing gloves in the video recordings, Beasley responded that he had been working on an automobile engine and put the gloves on to keep from contaminating the root with oil.

At sentencing, the district court found that Beasley's Guidelines range was 360 months to life imprisonment, and increased his mandatory minimum sentence for count 4 based on his prior felony convictions. The court explicitly accepted Beasley's presentence investigation report, in which Beasley stated that he experimented with crack cocaine in 1989, 1991, and 1993; he had participated in a 28-day program for crack cocaine while previously incarcerated, as well as other drug testing and treatment programs; and he was not addicted to illegal drugs. The court sentenced Beasley to 360 months' imprisonment on each count, to run concurrently, and imposed an eight-year term of supervised release with special conditions, including that Beasley "shall participate in any program of testing and treatment for drug and alcohol abuse that may be directed by the probation officer."

## DISCUSSION

### I.     Motion to Suppress

#### A.  Standard of Review

Under Federal Rule of Criminal Procedure 12(e), a party waives any pretrial defense or objection that he did not raise prior to the pretrial motions deadline. "[S]uppression arguments raised for the first time on appeal . . . will be deemed waived under Rule 12(e)." *United States v. Lopez-Medina*, 461 F.3d 724, 738 (6th Cir. 2006). However, the court may grant relief from the waiver for good cause. FED. R. CRIM. P. 12(e).

"When faced with a defendant's complete failure to file a pretrial suppression motion, we have held that 'we are categorically without jurisdiction to hear appeals of suppression issues raised for the first time on appeal.'" *Lopez-Medina*, 461 F.3d at 739 (quoting *United States v. Crimson*, 905 F.2d 966, 969 (6th Cir. 1990)). "On the other hand, we have applied [Federal Rule of Criminal Procedure] 52(b)'s plain error review to new suppression arguments raised for the

first time on appeal after a defendant's original suppression arguments proved unsuccessful at the trial court level." *Id*. Because Beasley did not completely fail to file a pretrial suppression motion, but instead filed an unsuccessful motion and raised a new suppression argument for the first time on appeal, we review for plain error. Under Rule 52(b) plain-error review, we only correct errors that are obvious or that seriously affect the fairness, integrity, or public reputation of judicial proceedings. *United States v. Critton*, 43 F.3d 1089, 1094 (6th Cir. 1995).

### B. Analysis

Beasley admits on appeal that, based upon the affidavit, if true, the warrant was valid. However, he argues that the district court erred in denying his motion to suppress because the affidavit contained a statement that was false or made in reckless disregard of the truth, arguing that Officer Taylor mischaracterized the cell phone monitoring of Hoyle and led the state judge to believe he was actually monitoring the transaction.[2]

When considering whether to suppress evidence based on a defendant's allegation that the affidavit contained a false statement, we apply a two-part test and examine "(1) whether the defendant has proven by a preponderance of the evidence that the affidavit contains deliberately or recklessly false statements and (2) whether the affidavit, without the false statements, provides the requisite probable cause to sustain the warrant." *United States v. Mick*, 263 F.3d 553, 563–64 (6th Cir. 2001) (quoting *United States v. Charles*, 138 F.3d 257, 263 (6th Cir. 1998)).

---

[2] Beasley also argues that Officer Taylor mixed facts from the first two controlled purchases with the April 19 purchase when he averred that the crack cocaine weighed approximately 9 grams in his affidavit. He argues that Officer Taylor mixed the April 8 crack cocaine weight with the April 19 weight because the crack cocaine on April 19 weighed approximately 11.9 grams and the April 8 crack cocaine weighed 10.9 grams. However, this discrepancy alone does not indicate that Officer Taylor mixed facts. He approximated the weight of the crack cocaine and, in fact, none of the purchases weighed precisely 9 grams. This is a minor discrepancy that does not warrant suppression. *See United States v. Elkins*, 300 F.3d 638, 649 (6th Cir. 2002) ("Minor discrepancies in the affidavit may reflect mere inadvertence or negligence, rather than the reckless falsehood that is required for exclusion.").

As to the first prong, "[m]inor discrepancies in the affidavit may reflect mere inadvertence or negligence, rather than the reckless falsehood that is required for exclusion." *United States v. Elkins*, 300 F.3d 638, 649 (6th Cir. 2002). As to the second prong, we pay great deference to a judge's probable cause determination and should only reverse if arbitrarily made. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

First, Beasley has not proven by a preponderance of the evidence that Officer Taylor's affidavit contained deliberately or recklessly false statements. He argues that Officer Taylor disclosed that his cell phone monitoring of Hoyle was not for evidentiary purposes but only for Hoyle's safety, that he could not clearly hear anything that went on during the purchase, and that he was not sure if Hoyle's cell phone was on during the April 19 purchase. However, Beasley misconstrues Officer Taylor's testimony that he "[could not] always hear exactly what the conversation [was]" to mean that he couldn't hear anything at all and also overlooks the fact that Officer Taylor testified that he believed Hoyle did have the cell phone on during the April 19 purchase.

Beasley assumes the affidavit's statement that Officer Taylor was monitoring Hoyle refers only to the cell phone monitoring, but Officer Taylor never defined monitoring.[3] Further, Officer Taylor's testimony demonstrates that he and other officers monitored Hoyle in many ways during each controlled purchase: they met with him before the transaction to pat him down and equip him with an audio/video recording device and money; they had him contact Beasley in their presence; they instructed him to leave his cell phone on so that they could monitor the transaction in real time and ensure his safety; and they again met with him after the controlled

---

[3] In fact, Officer Taylor's testimony at Beasley's supervised release hearing for a prior conviction indicates that Officer Taylor uses "monitoring" in broad terms because Officer Taylor testified that he was monitoring the controlled buy by handling the money, evidence, and Hoyle.

purchase to pat him down, retrieve the recording and verify its contents, and confiscate and test the crack cocaine.

Therefore, Officer Taylor's use of the generic term "monitor" in his affidavit does not indicate that he deliberately or recklessly included false statements. If any minor discrepancy between Officer Taylor's characterization of monitoring exists here, it reflects mere inadvertence, not the reckless falsehood required for exclusion.

Second, Beasley concedes on appeal that the affidavit, without the alleged false statements, provides the requisite probable cause to sustain the search warrant. The state judge's probable cause determination was not arbitrarily made and we will defer to his decision.

The district court did not err in denying Beasley's motion to suppress because Beasley has not proven that the affidavit contains deliberately or recklessly false statements and because the affidavit, even without the alleged false statements, provides the requisite probable cause to sustain the search warrant.

## II. Testimony of Government Expert Witness

### A. Standard of Review

We will not disturb a district court's decision to allow an expert to testify absent an abuse of discretion. *United States v. Montgomery*, 980 F.2d 388, 391 (6th Cir. 1992). If the court improperly admits expert witness testimony, the error is subject to harmless-error review, *id.* at 392, and must be disregarded if it does not affect substantial rights. FED. R. CRIM. P. 52(a).

### B. Analysis

Beasley argues that the district court erred in permitting Officer Hoing to testify regarding skin absorption of crack cocaine because Officer Hoing was not qualified to give the opinion and because his testimony did not assist the jury in understanding the evidence. He

further argues that Officer Hoing's testimony materially affected the verdict by allowing the government to establish the offense elements "in one fell swoop" and eviscerating Beasley's defense without first giving him an opportunity to challenge it or prepare for it prior to trial.

Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the expert's knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue and if the expert's testimony is based on sufficient facts or data and is the product of reliable principles and methods reliably applied to the facts of the case. "Whether a proposed expert's experience is sufficient to qualify the expert to offer an opinion on a particular subject depends on the nature and extent of that experience." *United States v. Cunningham*, 679 F.3d 355, 379 (6th Cir. 2012). We typically treat liberally the requirement that the witness first establish his expertise by reference to his knowledge, skill, experience, training, or education. *See Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (noting that "this requirement has always been treated liberally").

We "regularly allow[] qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate cautionary instructions are given, since knowledge of such activity is generally beyond the understanding of the average layman." *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) (quoting *United States v. Thomas*, 99 F. App'x 665, 668–69 (6th Cir. 2004)). "Police officers are routinely allowed to testify that circumstances are consistent with distribution of drugs rather than personal use." *Id*.

Officer Hoing testified as to his extensive experience, training, and education with illegal drugs and specifically with crack cocaine. He testified, based on his experience and training, that he had recovered gloves from homes where crack cocaine was distributed and that he and his

fellow officers believe that dealers use gloves to keep the crack cocaine off them and to prevent their leaving fingerprints. Officer Hoing also testified that crack cocaine can be absorbed into the skin and that he had learned in training to wear gloves so as to not expose his skin to crack cocaine.

Treated liberally, Officer Hoing established his expertise as to the use of gloves in drug distribution cases. As a qualified law enforcement officer, his testimony demonstrated circumstances and crime scene characteristics consistent with crack cocaine distribution, including the use of gloves. Further, the court gave the jury an appropriate cautionary instruction that the jury was not required to accept Officer Hoing's testimony. Also, his testimony assisted the jury in understanding why certain items recovered during the search, including gloves, are indicative of drug distribution activities, which is generally beyond a layman's understanding.

Therefore, the district court did not abuse its discretion in permitting Officer Hoing to testify regarding the skin absorption of crack cocaine. *Montgomery*, 980 F.2d at 391. "The recognized role of police officers as experts in cases such as this one requires that we find no error in the admission of [Officer Hoing's] testimony." *Swafford*, 385 F.3d at 1030.

Even if the district court abused its discretion, the error was harmless because it did not affect Beasley's substantial rights. The jury heard testimony from Hoyle and Officer Taylor concerning the three controlled purchases in which Beasley sold Hoyle crack cocaine, as well as testimony from Officer Taylor regarding the items recovered during the search warrant's execution. Officer Hoing also testified as to what items he would expect a person distributing drugs to possess, which were all items recovered at Beasley's residence.

Further, Beasley was able to assert his defense that he was selling John the Conqueror Root and was wearing gloves to prevent getting oil on the root, thus providing an alternative

explanation to the jury. Beasley was also given the opportunity to cross-examine Officer Hoing regarding the gloves, but failed to do so.

Therefore, because there was overwhelming evidence to support the jury's verdict without reference to Officer Hoing's testimony regarding skin absorption of crack cocaine and because Beasley was able to present his defense and challenge Hoing's testimony, any error was harmless and must be disregarded. FED. R. CRIM. P. 52(a).

### III.    Special Condition of Supervised Release

Beasley challenges his special condition of supervised release that requires him to participate in drug and alcohol testing and treatment programs at his probation officer's discretion, arguing that it involves a greater deprivation of liberty than reasonably necessary.

"[C]onditions of supervised release may be ripe for appellate review immediately following their imposition at sentence." *United States v. Lee*, 502 F.3d 447, 449–50 (6th Cir. 2007). However, challenges to non-mandatory special conditions may not be ripe for review. In *Lee*, we found that the defendant's challenge to his special condition that he "must participate in a specialized sex offender treatment program that *may* include the use of plethysmograph or polygraph" was not ripe for review because there was no guarantee that the defendant would ever be subject to the condition. *Id*. at 450.

As in *Lee*, Beasley's special condition is non-mandatory and there is no guarantee that he will ever be directed by his probation officer to participate in drug and alcohol testing and treatment programs. Therefore, Beasley's challenge is not yet ripe for review.

**IV.      Increase of Mandatory Minimum Sentence**

Beasley argues that it was error to increase the mandatory minimum sentence for count 4 where his prior convictions were not proved to the jury beyond a reasonable doubt.

In *Alleyne v. United States*, the Supreme Court held that "[f]acts that increase the mandatory minimum sentence are [] elements and must be submitted to the jury and found beyond a reasonable doubt." 133 S. Ct. 2151, 2158 (2013). However, the Court explicitly declined to revisit its narrow exception for the fact of a prior conviction. *Id.* at 2160 n.1 (citing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)). We have likewise held that *Alleyne* did not undermine the *Almendarez-Torres* exception. *See United States v. Mack*, 729 F.3d 594, 609 (6th Cir. 2013). Therefore, the district court did not err in increasing Beasley's mandatory minimum sentence for count 4 without submitting his prior felony convictions to the jury because the facts supporting those convictions do not have to be submitted to the jury and found beyond a reasonable doubt.

**AFFIRMED**.